ACKERMAN *v.* CINCINNATI, SAGINAW & MACKINAW RAIL-
ROAD CO.

1. RAILROADS—LEASES—VALIDITY—EFFECT.
    Under section 6339, 2 Comp. Laws, an instrument by which a
    railroad company leases its road and all its franchises, priv-
    ileges, etc., to another railroad company, nonresident, for a
    term of 99 years, is a valid lease and relieves the lessor from
    liability for acts done by the lessee in the subsequent mainte-
    nance and repair of the roadbed.

2. PLEADING—GENERAL ISSUE—MATTERS PROVABLE.
    In an action on the case against a railroad company to recover
    damages to lands from flooding by reason of an embankment
    on defendant's right of way, the defense that the embank-
    ment was built by another company, to which defendant has
    leased its property and franchises, is available under the gen-
    eral issue.

Error to Shiawassee; Smith, J. Submitted October 5,.
1905. (Docket No. 13.) Decided February 26, 1906.

Separate actions on the case by Clarence Ackerman
and William Ackerman against the Cincinnati, Saginaw
& Mackinaw Railroad Company for damages to land
caused by flooding. The cases were tried together by
stipulation, resulting in judgments for plaintiffs, and de-
fendant brings error. Reversed.

*Harrison Geer,* for appellant.

*Watson & Chapman,* for appellees.

HOOKER, J. This record presents the proceedings had
upon the trial of two causes, which by stipulation were
tried together at circuit, resulting in separate judgments
for the plaintiffs. The defendant has appealed.

The declarations are in case to recover damages to lands
from flooding. Previous to the acts which are said to

have caused the damage, one or more drains essential to the proper drainage of the plaintiffs' lands were crossed by defendant's railroad trains by means of an open trestle which permitted the uninterrupted and ready escape of excessive water through said drains and the natural depression through which the drains had been dug. The alleged cause of the trouble was the filling up by an earth embankment of the space occupied by the trestle, or a part of it, thereby obstructing the flow of the water, which caused an injury to the land and crop of the plaintiffs. The plea was the general issue. In addition to its defense upon the merits, the defendant introduced a written lease of the railroad from itself to the Grand Trunk Railroad of Canada for 99 years, with the privilege of renewal for a like period thereafter. It was executed December 28, 1900. This lease recited a former one, made in 1890, for 29 years and 2 months, of the same property, which was canceled as a part of the later transaction. Testimony was given to the effect that the Grand Trunk Railroad was in full possession after 1900 to the exclusion of defendant, and that it and not the defendant caused any and all obobstructions that were complained of, if there were such, and asked an instruction that verdicts for the defendant must be rendered. Thereupon the following occurred:

" *Mr. Watson:* For the purpose of getting it on the record, I now move to strike from the record the lease that has been introduced, and I insist that the lease has not been properly proved; that the paper has not been shown to be an instrument that could be executed. And I further move to strike it out for the reason that it is incompetent, irrelevant, and immaterial, and for the further reason that a railroad company in this State cannot contract against obligations that are imposed upon it by the statutes of the State. Now, in discussing this matter, I desire first to call your attention to the statute that makes it obligatory on the railroad company to construct its track —that is, 2 Comp. Laws, § 6301—and which provides that the owner of any railroad shall construct its roadway in such a manner over these drains that it will not back the water up. Another section of statute provides that same

thing, with the additional clause that it may also be liable, and then the section 6339 gives the railroad company the right to lease, and 6340, that provided that they may lease their right of way, their franchise, and all those things, and provides that the lessee shall take the property subject to the obligations that are imposed upon the original company, so there isn't any question about that.  *  *  *  I insist that the lease should be stricken from the record in this case.

"This motion was granted, and the lease (Exhibit 3) was ordered stricken from the record."

The motion was denied, and the cause went to the jury; a request to direct a verdict being also denied.

The question of what the liabilities of a lessor of a railroad are has been raised in nearly all of the States, and it cannot be denied that there are many cases sustaining plaintiffs' contention.  Some of them hold that the liability extends no further than keeping the roadbed, fences, etc., in condition required by law.  Others go to the extent of holding that the lessor is liable for injuries to passengers and travelers on the highways.  There are some that extend the liability to cases of injury to employés of the lessee, while others deny this on the ground of absence of privity of contract.  Some have rested the rule upon the theory of agency; while others say that the charter is a contract with the State, and that, though the road be leased under statutory authority, the lessor can only be released from its contract liability and enjoy immunity therefrom by express provision of the statute.  The latter rule has the support of Massachusetts, North Carolina, and Vermont.  *Ingersoll* v. *Railroad Co.*, 8 Allen (Mass.), 438; *Logan* v. *Railroad Co.*, 116 N. C. 940; *Nelson* v. *Railroad Co.*, 26 Vt. 717.  Those cases which rest upon the theory of agency would seem to rest upon an unsubstantial foundation, except where the facts fall short of an unrestricted lease.  Some of them are cases where there is opportunity for finding the relation to have been that of principal and agent.  The case of *Bay City, etc., R. Co.* v. *Austin*, 21 Mich. 399, relied on by plaintiff,

may be such an one, for aught that appears to the contrary therein.    Such cases are correctly decided.

No one doubts that without statutory authority a railroad company would be precluded from substituting another in its place to perform its obligations to the State and public, This question was consistently disposed of in England, by the holding that a railroad company could not make a valid lease of its rights and franchises; this is, upon the ground that the effect of a lease of property is to relieve the lessor from obligation to others in regard to its use, and that hence there could be no presumption of an intent to grant the power to lease—a logical conclusion.    But the doctrine that a statutory authority to lease a railroad leaves the lessor liable to the full extent that it would be if it operated the road itself, unless it be expressly stated to the contrary in the statute, can rest on nothing less than a supposed legislative intent to use the word "lease" in a limited and different sense than that usually given the term, which is in no regard doubtful—an interpretation which is in violation of 1 Comp. Laws, § 50, subd. 1, which provides that:

"All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."

It seems to us the better rule that, where a legislature has given authority to a railroad company to lease its railroad, it should be deemed to have intended to authorize an effective instrument, having the characteristics and qualities of a lease, as established by a long line of consistent holdings by the courts.    The following authorities support this view of the subject:  *McCafferty* v. *Railroad Co.*, 61 N. Y. 178.    Thus, in *Mayor, etc., of New York* v. *Railway Co.*, 113 N. Y. 311, in an action to compel payment of taxes, it was held that:

"While no such obligation was imposed by the acts au-

thorizing said company to lease its road (chapter 199, Laws of 1873; chapter 389, Laws of 1875), or by any statute, defendant, upon taking the place of its lessor as to its charter rights and power, took its place also as to its charter obligation and duties, and was not entitled to exercise the former without discharging the latter."

See *Ahern* v. *Steele*, 115 N. Y. 203 (5 L. R. A. 449), as to effect of demise generally. The case of *Miller* v. *Railroad Co.*, 125 N. Y. 122, is a case much like the present case, if not on "all fours." *Cain* v. *Railroad Co.*, 27 App. Div. (N. Y.) 376; *Caruthers* v. *Railroad Co.*, 59 Kan. 635 (44 L. R. A. 737); *Little Rock, etc., R. Co.* v. *Daniels*, 68 Ark. 171; *Heron* v. *Railway Co.*, 68 Minn. 548; *St. Louis, etc., R. Co.* v. *Curl*, 28 Kan. 622; *Missouri Pacific R. Co.* v. *Watts*, 63 Tex. 553. The opinion of Brewer, J., in last-cited case was followed in *Hayes* v. *Railroad Co.*, 74 Fed. 282. Also, see opinion of Lurton, J., in *Arrowsmith* v. *Railroad*, 57 Fed. 165, where he says: '

"Where obligations are imposed by charter or statute law upon a railroad company for the protection and advantage of the general public not having contract relation with it, it may very well be said that a general authority to lease out its road, which contains no provision exempting it from such public obligations, will not absolve it from liability. So, if a railway be in such condition that it is a nuisance when leased out, by reason of the absence of something necessary to its safe operation, or the presence of something dangerous to its safe operation, and this nuisance be continued by the lessee, both the lessor and the lessee would be liable; the one as having created, and the other as having continued, a nuisance. But to say that, after the lessor has, by authority of law, transferred the control and management of its road to another, he shall, unless specially exempted, remain liable for all the torts and contracts of the lessee, is to ignore the contract of lease and the legislative sanction under which it was made. The State, on grounds of public policy, may well refuse its consent to the transfer; but, if it consent, then there is no public policy to authorize the courts to say that the responsibility for the future management and operation of the road has not been exclusively imposed

upon the lessee, as the lawful substitute for the company owning the road."

Especially is this true where the statute provides expressly that all of the rights and obligations shall pass with the lease to the lessee, who, according to the terms of the statute, must be a railroad company, and who, by accepting it, assents to hold and operate the road and property and franchises subject to all the duties and obligations, and with all the rights and privileges prescribed by the general railroad law of the State. 2 Comp. Laws, § 6339.

The testimony in the present case shows beyond question that the defendant leased its entire road and equipment and franchises for 99 years to a nonresident corporation, some years before the act complained of. The authority of the nonresident company to accept a lease of a railroad under the laws of Canada is not raised, and need not be considered. Its authority under our law will be found in 2 Comp. Laws, § 6339, which provides:

"That it shall be lawful for any railroad company organized or that may be organized under the laws of this State, to sell, lease and convey its road, together with the rights and franchises connected therewith, or any part or portion thereof, to any other railroad company, whether organized within or without this State; and to acquire by lease or purchase from the owner of any other railroad, such road, together with the rights and franchises connected therewith, or any part or portion thereof, whether located within or without this State; and for the railroad company so purchasing or leasing to acquire and use such road, rights and franchises by purchase of the stock or otherwise, as may be agreed between the parties interested, said railroads not to have the same terminal points and not being competing lines: *Provided,* The stockholders owning a majority of the stock of said companies shall consent thereto: And, *Provided further,* That the company so purchasing or leasing shall hold and operate such road and said property and franchises subject to all the duties and obligations and with all the rights and privileges prescribed by the general railroad laws of this State."

By the express terms of this act, not only the roadbed and rolling stock may be sold or leased, but also the "rights and franchises" connected therewith, i. e., the lessee takes and operates the road, subject to all the duties and obligations and with all the rights and privileges prescribed by the general railroad laws of this State. See *Thayer* v. *Railroad Co.*, 93 Mich. 150; *Gage* v. *Railroad Co.*, 105 Mich. 340.

Another feature of this act which should not be overlooked is that restricting such sales, leases, and conveyances to "another railroad company," which owes, or, as already shown by accepting the lease, assumes all obligations to the State and public which the general railroad law prescribes. The defense was available under the plea of the general issue.

The judgments are reversed, and new trials ordered.

CARPENTER, C. J., and GRANT, MONTGOMERY, and MOORE, JJ., concurred.