PEACOCK *v.* DETROIT, GRAND HAVEN & MILWAUKEE
RAILWAY CO.

1. RAILROADS—NOT LIABLE FOR NEGLIGENCE OF LESSEE.

A railroad company which has leased its property to another
is not liable for the negligent acts of such other.

2. SAME—OPERATION BY GOVERNMENT—RELATION OF LESSOR AND
LESSEE.

During the control of the railroads as a war measure by
the United States government by a director general (39
U. S. Stat. p. 645, 40 U. S. Stat. p. 1733, 40 U. S. Stat. p.
451 *et seq.*) the relations between a railroad and the gov-
ernment were either technically those of lessor and lessee
or analogous thereto.

3. PLEADING—DEFENSES—AFFIRMATIVE DEFENSES.

In an action against a railroad company in charge of the
director general for damage to property by fire, the de-
fense that the railroad company had committed no negli-
gent act, and that any negligent acts proven were the
negligent acts of the agents of the director general was
not an affirmative defense under section 2 of Circuit Court
Rule No. 23, nor would such defense be likely to take
plaintiff by surprise.

4. EVIDENCE—JUDICIAL NOTICE OF ACTS OF CONGRESS.

The courts of this State take judicial notice of the acts of
Congress, and the proclamations of the President.

5. APPEAL AND ERROR—AMENDMENT OF PLEADING—SUBSTITUTING
DIRECTOR GENERAL FOR RAILROAD COMPANY ON ERROR.

Where the director general of railroads, by general order,
ordered that all actions at law for loss and damage to
property arising under government control should be
brought against the director general, and also gave his
consent to amendments substituting the director gen-
eral for the railroad company, and dismissing the com-
pany from the action, he cannot be heard to complain
if the Supreme Court, under the broad power conferred
by the statute of amendments (3 Comp. Laws 1915, §
12478) permits such amendment in this court, and affirms
the judgment in favor of plaintiff; there being no defense
upon the merits.

On liability of railroad company for injuries caused by an-
other company using road under lease, license or other contract,
see note in L. R. A. 1918E, 260.

Error to Shiawassee; Collins (Joseph H.), J. Submitted October 24, 1919. (Docket No. 18.) Decided December 23, 1919.

Case by Carrie E. Peacock, administratrix of the estate of Frank Peacock, deceased, and personally against the Detroit, Grand Haven & Milwaukee Railway Company for damage to fruit trees by fire. Judgment for plaintiff. Defendant brings error. Order entered substituting the director general of railroads for defendant railway, and judgment affirmed.

*Harrison Geer* (*W. K. Williams*, of counsel), for appellant.

*Miner & Miner*, for appellees.

FELLOWS, J. By the act of August 29, 1916, entitled: "An act making appropriations for the support of the army for the fiscal year ending June thirtieth, nineteen hundred and seventeen, and for other purposes," the congress of the United States, among other things, enacted (39 U. S. Stat. p. 645):

"The President, in time of war, is empowered, through the secretary of war, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable."

On December 26, 1917, this country was at war with Germany and with Austria. On that date the President issued a proclamation (40 U. S. Stat. p. 1733). It is not necessary to quote it in full; but in it the President did—

"Take possession and assume control at 12 o'clock noon, on the 28th day of December, 1917, of each and every system of transportation and the appurtenances thereof, located wholly or in part within the boundaries of the continental United States and consisting of railroads and owned or controlled systems of coastwise and inland transportation engaged in general transportation, whether operated by steam or by electric power." * * *

And by the proclamation the President directed that the possession, control, operation and utilization of such transportation systems should be exercised by and through William G. McAdoo therein appointed and designated as "director general of railroads"; and such director general of railroads was authorized to control and operate such systems through the officers and employees thereof.

On March 21, 1918, the congress by an act entitled "An act to provide for the operation of transportation systems while under Federal control, for just compensation of the owners, and for other purposes" (40 U. S. Stat. p. 451 *et seq.*), after reciting that the President had in time of war taken possession, use, control and operation of the transportation systems, made quite comprehensive provisions with reference to such Federal control. So far as important here, the act provided for the execution of agreements for compensation to the owners while under Federal control, provided for control and compensation in the absence of agreements, declared the money and property derived from operating the systems to be the property of the United States, appropriated the sum of $500,000,000 for a revolving fund for the purpose of paying the expenses of Federal control. Among the provisions in section 10 of the act is the following:

"Actions at law or suits in equity may be brought by and against such carriers and judgments rendered

as now provided by law; ana in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal government. * * * But no process, mesne or final, shall be levied against any property under such Federal control."

Considering the Federal control over the transportation systems of the country, the Supreme Court of the United States speaking through the Chief Justice in the case of *Northern Pacific R. Co.* v. *North Dakota*, 250 U. S. 135 (39 Sup. Ct. Rep. 502), said:

"No elaboration could make clearer than do the act of congress of 1916, the proclamation of the President exerting the powers given, and the act of 1918, dealing with the situation created by the exercise of such authority, that no divided but a complete possession and control were given the United States for all purposes as to the railroads in question. But if it be conceded that, despite the absolute clarity of the provisions concerning the control given the United States, and the all-embracing scope of that control, there is room for some doubt, the consideration of the general context completely dispels hesitancy. How can any other conclusion be reached if consideration be given the comprehensive provisions concerning the administration by the United States of the property which it was authorized to take, the financial obligations under which it came, and all the other duties and exactions which the act imposed, contemplating one control, one administration, one power for the accomplishment of the one purpose, the complete possession by governmental authority to replace for the period provided the private ownership theretofore existing?"

On October 28, 1918, the then director general of railroads promulgated what is known as "General Order No. 50." In it we find the following:

"It is therefore ordered, that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court, based on contract, binding upon the director general of railroads, claim for death or

injury to person, or for loss and damage to property arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad or system of transportation by the director general of railroads, which action, suit, or proceeding but for Federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, director general of railroads, and not otherwise; * * *

"The pleadings in all such actions at law, suits in equity, or proceedings in admiralty, now pending against any carrier company for a cause of action arising since December 31, 1917, based upon a cause of action arising from or out of the operation of any railroad or other carrier, may on application be amended by substituting the director general of railroads for the carrier company as party defendant and dismissing the company therefrom."

The plaintiffs own land adjoining the right of way of the Detroit, Grand Haven & Milwaukee Railway Company. Upon this land they had a considerable number of fruit trees. On March 22, 1918, and while said railroad property was under Federal control, sparks from a passing locomotive set fire to the grass either on the right of way or on plaintiffs' land; the fire spread, killing a large number of fruit trees and damaging others. On June 1st, this action was commenced by declaration against the railway company to recover for such damages. To the declaration the defendant pleaded the general issue. At the opening of the trial counsel for the defendant offered that the proceedings might be amended by making the director general of railroads defendant, stating that he would not ask for a continuance if the amendment was made, but did object to proceeding further against the railway company, and insisted that the wrong defendant was named. By appropriate motions and requests the objection to a recovery against the railway company was properly raised. Considering the act itself, what

is disclosed by this record, and what occurred at the argument, it substantially appears that the attorney who tried the case was the attorney for both the railway company and the director general of railroads. No claim is made that the service of the declaration was defective or that it was not made on the proper agent of the director general of railroads. The objections made were overruled and the case proceeded as instituted, resulting in a verdict and judgment against the railway company.

The arguments revolve around the construction and validity of the act of congress. On the part of the plaintiff, it is urged that the term "such carriers" found in section 10 of the act of March 21, 1918, has reference to the corporation owning the railroad, while defendant's counsel insists that it has reference to the director general of railroads. The statute has been considered by several courts, and a comparison of the decisions, and the various constructions urged as the proper one are of interest. Among the cases are *Johnson* v. *McAdoo*, 257 Fed. 757; *Jensen* v. *Railroad Co.*, 255 Fed. 795; *Postal Telegraph-Cable Co.* v. *Call* (C. C. A.), 255 Fed. 850; *Bryant* v. *Pullman Co.*, 188 App. Div. 311 (177 N. Y. Supp. 488) ; *McGregor* v. *Railway Co.* (N. Dak.), 172 N. W. 841; *Lavalle* v. *Railway Co.* (Minn.), 172 N. W. 918; *Gowan* v. *McAdoo* (Minn.), 173 N. W. 440; *Rutherford* v. *Railroad Co.*, 254 Fed. 880; *Schumacher* v. *Railroad Co.*, 175 N. Y. Supp. 84; *Hatcher & Snyder* v. *Railway Co.*, 258 Fed. 952; *Mardis* v. *Hines*, 258 Fed. 945; *Castle* v. *Railway Co.* (S. C.), 99 S. E. 846; *Vaughn* v. *State* (Ala. App.), 81 South. 417; *Haubert* v. *Railroad Co.*, 259 Fed. 361. Other constructions than those suggested by counsel in the instant case have been suggested or may be indulged in. It is possible that congress thought to preserve to persons having causes of action antedating government control the right to proceed against the

corporation during government control, or to expressly preserve the right to proceed against the corporation for its own acts which occurred or accrued during government control, and at the same time preserve the railroad property from seizure or process. But in the disposition we propose to make of the case, we find it unnecessary to devote time or space to a consideration or discussion of the legislative intent.

Whatever the holding elsewhere, it is the settled law of this jurisdiction that a railroad company which has leased its property to another is not liable for the negligent acts of such other, that the recovery should be had against the company by whose negligent acts the damage was done. *Ackerman* v. *Railroad Co.*, 143 Mich. 58 (8 Ann. Cas. 118). While this record does not disclose whether or not a lease was entered into between the company and the government, it is unimportant so far as the rights of the parties to this litigation are concerned. By the act of congress compensation was to be paid by the government to the railroad company whether a lease was executed or not. The relations were either technically those of lessor and lessee or analogous thereto.

The defense of the railroad company that it had committed no negligent act resulting in damage to the plaintiff, that any negligent acts proven were the negligent acts of the agents of the director general of railroads, was not an affirmative defense under section 2 of Circuit Court Rule No. 23, nor would such defense be likely to take the plaintiff by surprise. The courts of this State take judicial notice of the acts of congress. *McMorran Milling Co.* v. *C. H. Little Co.*, 201 Mich. 301; and of the proclamations of the President. *Jenkins* v. *Collard*, 145 U. S. 546 (12 Sup. Ct. Rep. 868).

But the director general of railroads by General Order No. 50 has ordered that "actions at law * * *

for loss and damage to property arising since December 31, 1917, * * * shall be brought against William G. McAdoo, director general of railroads, and not otherwise," and by the same order has given his consent to amendments substituting the director general for the company and dismissing the railroad company from the action. We do not determine the validity or the propriety of an administrative order directing the method of procedure in the courts of the various States. What we do determine is that the director general of railroads cannot be heard to complain if this court, under the broad power conferred upon it by the statute of amendments, permits such amendment here. It is not pointed out that any defense was, or is, available to the director general of railroads upon the merits that was not permitted in the trial court. Indeed, there appears to have been no defense made on the question of negligence; that the locomotive set the fire resulting in the destruction of some of plaintiffs' fruit trees appears not to have been disputed; the amount of such damage was in dispute. The case was tried by the attorney for the director general of railroads; when the trial began he suggested that the amendments be then made as provided by General Order No. 50, and stated that it might be made without a continuance. Section 12478, 3 Comp. Laws 1915, provides:

"The court in which any action or proceeding shall be pending, shall have power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as shall be just, at any time before judgment or decree rendered therein. The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings, which do not affect the substantial rights of the parties."

An order will be here entered substituting the di-

rector general of railroads for the railway company and dismissing the case as to the railway company. Upon the entry of such order the judgment will be affirmed. The railway company will recover its costs to be taxed. ·

BIRD, C. J., and SHARPE, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.