[Cr. 194]

THE STATE OF NORTH DAKOTA, Respondent, **v.** VICTOR F. JOHNSON, Appellant

(16 NW(2d) 873)

Opinion filed December 28, 1944

*Allen W. Wood,* for appellant.

*Ralph F. Croal,* for respondent.

Burr, J. In the county court of Cass County with increased jurisdiction, the defendant was tried, convicted, and sentenced on the charge that on August 13, 1943, he "did willfully and unlawfully operate a motor vehicle upon U. S. Highway No. 10, Cass county, North Dakota, at an excessive rate of speed, to-wit: 55 miles per hour." A motion for a new trial was made and denied and defendant appeals.

There were but two witnesses who testified to any material matter. A highway patrolman testified he followed the defendant to observe his speed and the defendant was traveling at the rate of fifty-five miles per hour. The defendant testified his rate of speed did not exceed thirty-five miles per hour.

Practically all the specifications of error are based on instructions of the court, with reference to the provisions of Chapter 181 of the Session Laws of 1943, and the validity of the executive order issued by the Governor of this state under the provisions of said Chapter. These are all we need consider.

In the charge to the jury, the court stated:

.    .    .    .    .    .    .    .    .    .    .    .

"At the last Session of the Legislature, which convened at Bismarck, that was something like a year and a half ago, the Legislature passed a law authorizing and empowering the Governor of this State to by order or proclamation regulate the speed upon the highways of the State.

That was done, of course, as an emergency or war measure. You will no doubt recall that the President had issued a proclamation requesting that the speed of motor vehicles on the highways in the various states, in the conservation of rubber and gasoline, be kept down to thirty-five miles per hour, and so in line with that the Legislature passed a law empowering the Governor of this State to regulate the speed and thereupon, and under the provisions of that law, the Governor later issued his proclamation which has the effect of an order and which has the effect of law, limiting the speed upon the highways to thirty-five miles per hour, and that, Ladies and Gentlemen, is the law of the State at the present time; that the maximum speed upon all highways is thirty-five miles per hour. Now that is all the law you need in this case. There aren't any complicated legal questions involved here at all. It is just a question of fact. Did Victor F. Johnson, or did he not operate this car out here between here and West Fargo on Number 10 in excess of thirty-five miles per hour. If he did, if the evidence shows you that he did go at a speed greater than thirty-five miles per hour, then he violated the law and is guilty and your verdict should so say.

. . . . . . . . . . . .

"So it is just a question of whether Victor F. Johnson drove this car at a speed in excess of thirty-five miles per hour, . . ."

The exact rate of speed is not determined by the verdict of the jury, but under the charge the jury settled it was in excess of thirty-five miles an hour.

The entire case for the state rests upon the interpretation and application of the provisions of this chapter 181. The chapter is entitled, "An Act to Facilitate the efficient transportation of persons and property needed for the effective prosecution of the war, to Authorize State cooperation with the officers and agencies of the United States in respect thereof, granting certain Emergency Powers to the Governor in relation thereto, Creating a State Highway Advisory Committee to the War Department, Defining its powers and duties, and Making an appropriation therefor, and declaring an emergency."

It creates "The North Dakota Traffic Advisory Committee to the War Department" to be known as the Highway Traffic Advisory Committee. By § 5, subds. 1 and 2, the Governor is authorized and empowered: "to cooperate with any officer or agency of the United States

directly or indirectly charged with responsibility for facilitating the transportation of persons or property and concerned with the conservation and provident utilization of vital transportation equipment, materials or supplies. In furtherance of such cooperation, the Governor shall have power, by Executive Order, *when requested* by the President of the United States, the Secretary of War, the Secretary of the Navy, the Attorney General of the United States, or by any officer or agency of the United States, and when it has been recommended by the Highway Traffic Advisory Committee, or a majority thereof:

"(1) To suspend or modify the enforcement of any statute or regulation relating to the operation of motor vehicles upon the highways and streets in the State where it appears that the enforcement of such statute, ordinance or regulation would hinder, impede or interfere with the proper conduct of the war;

"(2) To prescribe maximum rates of speed at which any motor vehicle may be operated on any highway or street in this State;
. . . ."

"(3–6) . . ."

The statute further provides, in § 7: "Any person who violates any of the provisions of this Act, or of any order, rule or regulation promulgated by the Governor pursuant to this Act, shall be deemed guilty of a misdemeanor, and upon conviction, shall be punished by a fine of not more than $100.00, or by imprisonment in the County jail for not more than thirty days, or both such fine and imprisonment."

It is strenuously contended the power attempted to be conferred by the legislature upon the Governor is beyond the scope of legislative authority, and therefore the proclamation has no legal effect. The state has not argued or filed a brief in this appeal and so we do not have the benefit of any research on the part of those who would sustain the conviction.

We take judicial notice of proclamations issued by the Chief Executive. Kosel v. First Nat. Bank, 55 ND 445, 449, 214 NW 249, 251. See also Givens v. Zerbst, 255 US 11, 65 L ed 475, 41 S Ct 227; Carnley v. Brunson, 227 Ala 197, 149 So 87; Helm v. Hines, 109 Kan 48, 198 P 190; Phillips v. Director Gen. 251 Mass 263, 269, 147 NE 96, 98; Peacock v. Detroit, G. H. & M. R. Co. 208 Mich 403, 175 NW 580.

Some of these cases cited deal with proclamations issued by the President of the United States, but the principle is the same when applied to the act of the Governor. We know therefore that the Governor issued this proclamation involved, and its contents, even though no copy was offered in evidence nor presented. But this leaves the effect of the proclamation to be determined.

In this proclamation, after referring to the present war, the shortage of materials, the supply of petroleum products, the necessity to conserve motor vehicles, etc., the Governor announces:

"Now, therefore, I, John Moses, Governor of the State of North Dakota, under and by virtue of the authority vested in me by the provisions of Chapter 181 of the Session Laws of North Dakota for the year 1943, and upon the recommendation of the Highway Traffic Advisory Committee of North Dakota, as provided in said law, do hereby,

"Proclaim, that the legal speed limit of motor vehicles on the highways and roads of this State, during the duration of the present war or until further proclamation by me, shall be thirty-five (35) miles per hour.

"This proclamation shall become effective at 12:01 A.M. on the 14th day of June, 1943."

While the proclamation states there was a recommendation by the Highway Traffic Advisory Committee, there is no statement of request by any official of the United States authorized to make a request. Neither did the state contend there was any such request.

A great deal of the argument on appeal is based on the alleged unconstitutionality of the law on various grounds, one of which is that it is an unconstitutional delegation of legislative power to the Governor.

We need not pass upon the constitutionality of the act. It is clear that even if the legislature has the power to confer upon the Governor such authority, the authority conferred must be exercised strictly within the limits prescribed by the legislature, and no valid executive order can be made unless there is first this direct request to the Governor from some one or more of the United States officials designated by the legislature.

We are not unmindful of the general rule that official acts are presumed to be regular, are properly performed, and that ordinarily the

one who attacks the act must show, prima facie at least, lack of power for the alleged official act or that the power granted has been transcended. When we are dealing with an act of the chief executive of the state, this presumption is especially strong. People ex rel. Engley v. Martin, 19 Colo 565, 36 P 543, 24 LRA 201.

However, there are limitations upon such a presumption. Distinction must be made between proclamations which are peculiarly within the sphere of the executive power as vested in him by the constitution, and proclamations issued in accordance with legislative authority and which are legislative in their origin and character, rather than executive. Clearly, the proclamation involved is not based on an executive power conferred upon the Governor by the constitution. The power to issue this proclamation must be found somewhere else.

It is a general rule that the Governor will be presumed to do that only which he is authorized to do by the statute and the constitution. People ex rel. Griffith v. Scott, 52 Colo 59, 72, 120 P 126, 130. But the United States Supreme Court has pointed out, the presumption is that officers do their duty but "nowhere is the presumption held to be a substitute for proof of an independent and material fact." United States v. Ross, 92 US 281, 285, 23 L ed 707, 709.

The conviction in this case rests upon the validity of the proclamation as it was issued. Without this, there is no foundation for the charge of the court. Thus the party claiming under and by virtue of this proclamation—that is, the state—must make strict proof of performance of every prerequisite of law. This burden upon the state is all the more important when the violation of such a proclamation will operate to deprive a person of his liberty and stamp him as one who has committed crime. Wildman v. Enfield, 174 Ark 1005, 298 SW 196.

We have already pointed out the statutory conditions under which such a proclamation may be issued. The state failed to show any request on the part of any of the federal officers specified in section 5 of the act. The request must be addressed to the Governor by a federal officer designated. We can not indulge in the presumption to the extent of supplying the necessary authority for the act. Richards v. Rule (Tex Civ App) 207 SW 912. When such proclamation is issued, it

must be issued within and under the limitations laid down by the legislature—the body that furnishes the authority for the act.

If the legislature had power to delegate such authority—a question which we do not determine—it could have delegated the authority to the highway commissioner or any other official and in this respect the fact that the authority was delegated to the Governor does not give it any added weight. The highway commissioner or any other officer would be required to act within the authority and under the limitations prescribed by the statute and where there is an apparent and fatal defect therein we can not use the presumption to supply that defect or to imply the existence of necessary prerequisites.

The judgment therefore is reversed and the case remanded for further proceedings in conformity with this decision.

Morris, Ch. J. and Christianson, Burke and Nuessle, JJ., concur.