GULF, COLORADO & SANTA FE RAILWAY COMPANY v. J. P. NELSON.

No. 2416.   Decided March 14, 1917.

### 1.—Carriers—Interstate Commerce Law—Connecting Lines.

Under the Carmack Amendment to the Interstate Commerce Law (Act of Congress, June 29, 1906, ch. 3591, sec. 7; 34 Stats., 595; U. S. Comp. Stats., 1913, sec. 8592) the initial carrier receiving property for through interstate transportation over its own and connecting lines, is liable, not only for injury to the property transported, incurred on the line of a connecting carrier and by its negligence, but for special damages caused by negligent delay of the shipment upon such connecting line, it having notice, in making the contract, of the circumstances rendering such damage a natural result of the delay. New York P. & N. R. Co. v. Peninsular Prod. Exch. of Md., 240 U. S., 34, followed. (Pp. 310-312.)

### 2.—Same—Contract Restricting Liability.

Under the Amendment to the Interstate Commerce Law by Act of June 29, 1906, the liability for damages incurred on a connecting line, imposed by such law on the initial carrier, can not be avoided by it by inserting in the contract or bill of lading a clause limiting its liability to injuries incurred in the transportation over its own line. (Pp. 313, 314.)

### 3.—Carriers—Connecting Lines.

Under an oral contract by a carrier for transportation of a series of through shipments over its own and a connecting line to a point in another State, such carrier was liable for special damages for delay, growing out of circumstances of which it had notice when contracting, not only upon shipments originating on its own line, but on those originating on another road and coming to it therefrom for such transportation, provided it had notice that they were a part of the shipments contemplated by its original contract. (Pp. 313, 314.)

### 4.—Supreme Court—Question of Fact.

The Supreme Court has no power to determine questions of fact; it can only decide whether there is any evidence on a given point. Held that there

was evidence in this case tending to support conclusions: that the general freight agent had power to bind another road as well as his own by a contract for through transportation; that such other company was a party to the contract made through him; and that it had notice of circumstances subjecting it to special damages for delay in performance of such contract. (P. 314.)

**5.—Carrier—Contract—Pleading.**

Petition here considered is held to base plaintiff's action on an oral contract for through transportation of a series of shipments, and not on the bills of lading issued by the carrier for each of the several shipments as tendered. (P. 314.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Nelson sued the two railway companies, Gulf, C. & S. F. and Atchison, T. & S. F., and recovered judgment, which was affirmed on defendants' appeal (139 S. W., 81). Appellants then obtained writ of error.

*Terry, Cavin & Mills, Boyle, Storey & Davis, A. H. Culwell,* and *Williams & Stedman,* for plaintiffs in error.—To fix liability on a carrier for losses under a contract with a third party, especially of anticipated profits, it must be shown that the carrier had notice at the time the contract of shipment with it, that such losses would with reasonable certainty follow delay, and of the probable amount thereof. Missouri, K. & T. Ry. Co. v. Belcher, 89 Texas, 428; Missouri, K. & T. Ry. Co. v. Belcher, 88 Texas, 549; Pacific Express Co. v. Darnell, 62 Texas, 639; Belcher v. Missouri, K. & T. Ry. Co., 47 S. W., 385; Gulf, C. & S. F. Ry. Co. v. Cherry, 129 S. W., 152; Bradley v. C., M. & S. T. P. Ry. Co., 68 N. W., 411; St. Louis S. W. Ry. Co. v. May, 44 S. W., 408; Sutherland on Damages, sec. 1261; Daube & Kapp v. Railway Co., 39 Texas Civ. App., 24, 86 S. W., 797; Gulf, C. & S. F. Ry. Co. v. Gilbert, 4 Texas Civ. App., 366; Swift River Co. v. Fitchburg, 169 Mass., 326, 47 N. E., 1016; British Saw Mills v. Nettleship, L. R., vol. 3, C. P. C., 499; Thomas, etc., Co. v. Wabash, etc., R. Co., 62 Wis., 647; Central Trust Co. v. Clark, 92 Fed., 293.

No man can be made responsible, except through his voluntary obligation or contract for the conduct or the obligations of another, and the statute in question does make, in express terms, one carrier responsible for the obligations of another carrier as a matter of law. Munn v. Illinois, 94 U. S., 126; State v. Asso. Press, 60 S. W., 91; Den v. Hoboken, 18 Howard, 272; Lockner v. New York, 198 U. S., 45; Goldfield C. Mines Co. v. Goldfield Miners' Union, 159 Fed., 500; Adair v. United States, 208 U. S., 161; State ex rel. Zillmer v. Kreutzberg, 90 N. W., 1098; Smiley v. Kansas, 196 U. S., 447; State v. L. & N. Turnpike Co., 61 S. W., 1096; Gulf, C. & S. F. Ry. Co. v. Ellis, 165 U. S., 150; Chicago City Ry. Co. v. Chicago, 142 Fed., 844; Addyston Pipe & S. Co. v. United States, 175 U. S., 226; Atty. Gen. v. Boston & A. Ry. Co., 35 N. E., 253; Southern Pacific Co. v. Interstate Com. Com., 200 U. S., 553.

Said statute is inapplicable to the facts of this case, because this

suit was not predicated upon any loss, damage or injury to any property; in fact no claim is made that the property shipped, or any part thereof, was lost, damaged or injured; wherefore, the liability of neither of the defendants would be controlled or regulated by or under the provisions of said statute. Pecos & N. E. Ry. Co. v. Evans, 100 Texas, 190.

The operation of the Carmack amendment is to leave carriers free to make any contracts with reference to interstate shipments which are not forbidden by it, or by the common law. Missouri, K. & T. Ry. Co. v. Harriman, 227 U. S., 672; Kansas City So. Ry. Co. v. Carl, 227 U. S., 639; Chicago, R. I. & P. Ry. Co. v. Cramer, 232 U. S., 490; Great Northern R. Co. v. O'Connor, 232 U. S., 508; Atchison, T. & S. F. Ry. Co. v. Robinson, 34 Sup. Ct. Rep., 556.

Under the Interstate Commerce Act of Congress as construed by the following cases the shipper and carrier can not enter into an oral contract, but are limited to the contract in the bill of lading. Atchison, T. & S. F. Ry. Co. v. Robinson, 233 U. S., 173; C. & A. Ry. Co. v. Kirby, 225 U. S., 155; Adams Express Co. v. Croninger, 226 U. S., 505; Kansas City Ry. Co. v. Carl, 227 U. S., 639; Missouri, K. & T. Ry. Co. v. Harriman, 227 U. S., 657.

*Denman, Franklin & McGown,* for defendant in error.—Assignments which attack the findings of fact by the Court of Appeals based upon the verdict, or the verdict of the jury where there is evidence to sustain the verdict, are not reviewable by the Supreme Court. McDonald v. Cabiness, 100 Texas, 615; Swayne v. Ins. Co., 92 Texas 575; Walker v. Cole, 89 Texas, 323; Railway Co. v. Levine, 87 Texas, 437; Meade v. Blum Land Co., 85 Texas, 513.

The trial court properly ignored defendants' contention that the liability of the Gulf, Colorado & Santa Fe was limited to damages for delay occurring on its own line because under the Act of Congress known as the Carmack amendment a carrier receiving property for interstate transportation is liable for any loss, damage or injury on its own line or the line of its connecting carrier, and no contract, receipt or bill of lading can exempt such common carrier from such liability. Atlantic C. L. R. Co. v. Riverside Mills, 219 U. S., 186; Norfolk Truckers' Exchange v. Norfolk & Southern R. Co., 82 S. E. (Va.), 92; Southern P. Ry. Co. v. Lyon & Co., 66 So. (Miss.), 209; New York P. & N. Ry. Co. v. Peninsula Prod. Exch., 89 Atl. (Md.), 433; Missouri, K. & T. Ry. Co. v. Stark Grain Co., 103 Texas, 542; Texas C. Ry. Co. v. Hico Oil Co., 132 S. W., 381; St. Louis Ry. Co. v. Grayson, 115 S. W. (Ark.), 933; Chicago, R. I. & P. Ry. Co. v. Miles, 123 S. W. (Ark.), 775; Missouri, K. & T. Ry. Co. v. Carpenter, 114 S. W., 900.

If the notice is sufficient to take the case out of the rule of damages ordinarily obtaining or the circumstances of the transaction sufficient to put the party breaching the contract upon notice that more than ordinary damages will follow from its breach, then he is liable for all

damages resulting therefrom regardless of their nature or extent. The agent making the contract and the rates for transportation was the proper person to get notice, and it was his duty to have communicated it to the other agents or connecting carriers. Railway Co. v. Belcher, 88 Texas, 551; Railway Co. v. Belcher, 89 Texas, 430; Pacific Ex. Co. v. Black, 8 Texas Civ. App., 363, 27 S. W., 830; Railway Co. v. Hill, 63 Texas, 385; Railway Co. v. Nicholson, 61 Texas, 498; Railway Co. v. Jackson, 99 Texas, 343, 89 S. W., 968; Railway Co. v. Hume, 87 Texas, 219; Missouri, K. & T. Ry. Co. v. McFadden, 89 Texas, 145; Easton v. Dudley, 78 Texas, 238; McCarty v. Gulf, C. & S. F. Ry. Co., 79 Texas, 37; International & G. N. Ry. Co. v. Tisdale, 74 Texas, 8; Gulf, C. & S. F. Ry. Co. v. Funk, 42 Texas Civ. App., 492, 92 S. W., 1032; San Antonio & A. P. Ry. Co. v. Williams, 57 S. W., 883; Galveston, Harrisburg & San Antonio Ry. Co. v. Botts, 22 Texas Civ. App., 609, 55 S. W., 514; Hutchinson on Carriers, secs. 237, 249, 266; Northern Pac. Ry. Co. v. Am. Trad. Co., 195 U. S., 460.

MR. JUSTICE YANTIS delivered the opinion of the court.

Suit was instituted in the District Court of Bexar County, Texas, by J. P. Nelson, the defendant in error, against the Gulf, Colorado & Santa Fe Railway Company and the Atchison, Topeka & Santa Fe Railway Company, plaintiffs in error, to recover damages for delay in the shipment of a large quantity of material from points in Texas to Selden, New Mexico. Nelson had contracted with the United States government to construct a dam across the Rio Grande River and other work, including a canal near Las Cruces, New Mexico. His government contract was made November 5, 1906. The work, according to the contract, was to be begun on November 20, 1906, and completed within five months thereafter. The contract price was $143,078.95. It was alleged by Nelson that the date of completion, April 20, 1907, was so fixed that the dam might be completed before high water in the river set in, which was usually about the first of May, and which would interfere with and make the work more expensive if done after the high water came; that as soon as the contract was made with the United States government he organized an outfit at a cost of $36,000 and immediately made arrangements for the work to be performed; that among other things he made out a bill of lumber and material, which he purchased from the Spencer Lumber Company, and directed it to ship the same to him at Selden, New Mexico, in the order in which it would be needed; that he fully advised said lumber company of said contract with the United States government, and that the material ordered was to be used in the fulfillment of the said contract for the construction of said dam and the other work which he had contracted to do, and advised the Spencer Lumber Company that he was to complete the work by the 20th of April, 1907, and that there would be high water after April, 1907, which would retard the work and make it more expensive if he did not finish before the high water set in; that

he requested said lumber company to notify the railway companies of all of said facts, and of the necessity by reason thereof for the prompt shipment of the material; that said Spencer Lumber Company advised the plaintiffs in error of the purposes for which the material was to be shipped, and of the danger of high water in the Rio Grande River, and its damaging effect on the work, and to the defendant in error if the work should not be performed before the high water period in the river; that at the time the plaintiffs in error accepted the material for shipment they knew that said river rose every year about the middle of April, and that high water therein would retard the work and damage the defendant in error in the performance of his contract; that the Spencer Lumber Company ascertained, in its negotiations with the plaintiffs in error, that the then existing freight rate on lumber from initial points to El Paso was 18 cents per hundred pounds, and that the rate from El Paso to Las Cruces, a point sixteen miles further distant than Selden, was 16 cents per hundred, and this was a more direct and quicker route for shipments, and requested the shipments to be made via the Southern Pacific and then over the Atchison, Topeka & Santa Fe Railway to Selden for the aggregate rate of 34 cents, but that the railway companies refused to make a 34-cent rate via El Paso, but insisted on hauling all the material over their own rails, involving a much longer haul, and the plaintiffs in error refused to make the 34-cent rate requested except on condition that they be permitted to haul all of said material over their own roads; that this was agreed to by Spencer for and in behalf of the defendant in error, Nelson, and it was agreed between them that the plaintiffs in error would haul all of the material at the rate of 34 cents per hundred from initial points in Texas to Selden, New Mexico; that all of said material should be shipped over the plaintiffs in error's roads, except that it was agreed that as to such cars as were shipped in November and December the defendant in error, Nelson, would pay the regular rate for transportation of material shipped in said two months, it being ascertained that they could not get the consent of the Interstate Commerce Commission to make the 34-cent rate and put it into effect prior to January 1, 1907; that thereafter the Spencer Lumber Company, acting for Nelson, delivered to the plaintiffs in error such material for transportation from points in Texas for the defendant in error, J. P. Nelson, at Selden, New Mexico; that said shipments were delayed for an unreasonable length of time, resulting in the completion of the work being delayed eleven months after April 20, 1907, which was the date fixed in his contract with the United States government for the completion of the work; that he would have been able to complete the work within the time so specified in the contract except for the unreasonable delay on the part of the plaintiffs in error in the shipment of his material; that had he received his material in time to do so, his profit in the contract would have been $51,000; that by reason of the delays in shipment by the plaintiffs in error the actual cost of performing the

work was increased $21,500, which amount he had lost by reason of the delay in shipment; that he was forced to give eleven months of his time to the work in excess of the original contract, and that his time was worth $500 per month, amounting to $5500; that by reason of the delay in the transportation of the material the defendant in error was forced to employ a man to travel over the plaintiffs in error's roads to locate said material at places where it had been stored for an indefinite time, and who, after locating said material, succeeded in inducing the plaintiffs in error's agents to forward the same to the defendant in error, and paid to this person the sum of $225; that he was entitled to six .per cent interest on the sum of $36,000, which was the cost of his construction outfit, or $1980.

There was a trial by jury, which resulted in a verdict in favor of Nelson, the defendant in error.   The case was appealed by the railroad companies, plaintiffs in error here, to the Fourth Court of Civil Appeals at San Antonio, where the judgment of the District Court was affirmed in a very elaborate and carefully considered opinion by the late Chief Justice James of that court.   139 S. W., 81.   The cause came to this court by petition for writ of error for both the railroads on July 3, 1911.   The writ was refused, but later, acting on a motion for rehearing by the plaintiffs in error, on January 25, 1912, a writ of error was granted, this court then inclining to the view that the evidence failed to show that the Gulf, Colorado & Santa Fe Railway Company was liable for the negligence of the Atchison, Topeka & Santa Fe Railway Company.

The undisputed evidence shows that no delay occurred in the shipment of material on the lines of the Gulf, Colorado & Santa Fe Railway Company, and that all the delay which did occur was upon the lines of the Atchison, Topeka & Santa Fe Railway Company.   When the writ was granted in this case what is known as the Carmack amendment of the Interstate Commerce Act of June 29, 1906, was in effect, but it was then believed not to authorize damages against the initial carrier for delay in the transportation of property, but that damages could only be recovered against the initial carrier for injury to the property itself.   In this case there is no contention that the property itself was injured in shipment.   The contention is, that the plaintiffs in error are liable for special damages which resulted to Nelson, the defendant in error, by reason of delay only in shipment.   Said Carmack amendment provides as follows:

"That any common carrier . . . receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier . . . to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier . . . from the liability hereby imposed."

On January 24, 1916, the United States Supreme Court construed the Carmack amendment in the case of New York, Philadelphia & Norfolk Railroad Co., Plaintiff in Error, v. Peninsula Produce Exchange of Maryland, holding that special damages resulting from unreasonable delay in the transportation of property occurring anywhere en route, though not on the line of the initial carrier but its connecting line, are comprehended by the provisions of the Carmack amendment above quoted, and that the initial carrier is liable for such damages resulting from delay even where there is no injury to the property itself. 240 U. S., 34, 60 L. Ed., 511, 36 Sup. Ct., 230. Mr. Justice Hughes, rendering the opinion, said:

"We need not review at length the considerations which led to the adoption of this amendment. These were stated in Atlantic Coast Line R. Co. v. Riverside Mills, 219 U. S., 186, 199-203, 55 L. Ed., 167, 179-181, 31 L. R. A. (N. S.), 7, 31 Sup. Ct. Rep., 164. It was there pointed out that along with singleness of rate and continuity of carriage in through shipments there had grown up the practice of requiring specific stipulations limiting the liability of each separate company to its own part of the through route, and, as a result, the shipper could look to the initial carrier for recompense only 'for loss, damage, or delay' occurring on its own line. This 'burdensome situation' was 'the matter which Congress undertook to regulate.' And it was concluded that the requirement that interstate carriers holding themselves out as receiving packages for destinations beyond their own terminal should be compelled 'as a condition of continuing in that traffic to obligate themselves to carry to the point of destination, using the lines of connecting carriers as their own agencies,' was within the power of Congress. The rule, said the court, in defining the purpose of the Carmack amendment, 'is adapted to secure the rights of the shipper by securing unity of transportation with unity of responsibility.' And, again, we said in Adams Exp. Co. v. Croninger, 226 U. S., 491, 57 L. Ed., 314, 44 L. R. A. (N. S.), 257, 33 Sup. Ct. Rep., 148, that this legislation embraces 'the subject of the liability of the carrier under a bill of lading which he must issue.' 'The duty to issue a bill of lading and the liability thereby assumed are covered in full, and though there is no reference to the effect upon State Regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject.' Id., p. 506.

"It is now insisted that Congress failed to accomplish this paramount object; that while unity of responsibility was secured if the goods were injured in the course of transportation or were not delivered, the statute did not reach the case of a failure to transport with reasonable dispatch. In such case it is said that, although there is a through shipment, the shipper must still look to the particular carrier whose neglect caused the delay. We do not think that the language of the amendment has the inadequacy attributed to it. The words, 'any loss, damage, or

injury to such property,' caused by the initial carrier or by any connecting carrier, are comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination. It is not necessary, nor is it natural, in view of the general purpose of the statute, to take the words 'to the property' as limiting the word 'damage' as well as the word 'injury,' and thus as rendering the former wholly superfluous. It is said that there is a different responsibility on the part of the carrier with respect to delay from that which exists where there is a failure to carry safely. But the difference is with respect to the measure of the carrier's obligation; the duty to transport with reasonable dispatch is none the less an integral part of the normal undertaking of the carrier. And we can gather no intent to unify only a portion of the carrier's responsibility. Further, it is urged that the amendment provides that the initial carrier may recover from the connecting carrier 'on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property'; and this, it is said, shows that the 'loss, damage, or injury' described is that which may be localized as having occurred on the line of one of the carriers, and, therefore, should be limited to physical loss or injury. But we find no difficulty in this, as the damages required to be paid by the initial carrier are manifestly regarded as resulting from some breach of duty, and the purpose is simply to provide for a recovery against the connecting carrier if the latter, as to its part of the transportation, is found to be guilty of that breach. The view we have expressed finds support in the explicit terms of the Act of January 20, 1914, chap. 11, 38 Stat. at L., 278, which provides 'that no suit brought in any State court of competent jurisdiction against a railroad company . . . to recover damages for delay, loss of, or injury to property received for transportation by such common carrier under section 20 of the Act to Regulate Commerce . . . shall be removed to any court of the United States where the matter in controversy does not exceed, exclusive of interest and costs, the sum or value of $3000.' If the language of section 20 can be regarded as ambiguous, this legislative interpretation of it as conferring a right of action for delay, as well as for loss or injury to the property in the course of transportation, is entitled to great weight."

We feel constrained to the observance of the rule of liability as affecting the initial carrier in the construction of the Carmack amendment to the Hepburn Act made by the United States Supreme Court in said case. We, therefore, hold that the provisions in the bills of lading which were issued by the Gulf, Colorado & Santa Fe Railway Company when it accepted the material for shipment, limiting its liability to such damage as occurred on its own line, are void.

It is well settled at common law that when a joint contract between two railroad companies for through transportation of freight is breached

by either of such companies both are liable for the damage which results on either road if it were in contemplation of the parties at the time such contract was made that such damage might follow the breach of such contract, unless there is a valid provision limiting the liability of each company to the injury occurring on its own line.   In the oral contract sued upon there is no such limitation, and hence each company would be liable for the damage which occurred on either line since it was a contract for through shipment.   But it is here contended that even admitting such a joint contract was made at the beginning, still the fact that the evidence showed bills of lading were subsequently issued for most all the cars of freight at the time it was accepted for shipment, which did limit the liability of the Gulf, Colorado & Santa Fe Railway Company to the damages occurring on its own line, the issuance and acceptance of such bills of lading would constitute a modification of the original contract which would release the Gulf, Colorado & Santa Fe Railway Company from liability resulting from the negligent delay in the shipment of the material which occurred on the line of the Atchison, Topeka & Santa Fe Railway Company; and as all the delay occurred on such line, and no delay occurred on the line of the Gulf, Colorado & Santa Fe Railway Company, the latter would be absolved from liability because of such modification of the original joint contract by the bills of lading limiting its liability to injury which occurred on its own line.

There is much force and plausibility in the contention.   But since the Carmack amendment of the Hepburn Act of Congress makes stipulations in all contracts by the initial carrier, which limit liability to injury occurring on its own line, void, and since said Act of Congress requires such initial carrier to be liable for any injury occurring on its own line, or on the lines of its connecting carriers, we are unable to discern how such modification of the original contract by the bills of lading is of any virtue towards upholding the contention that the Gulf, Colorado & Santa Fe Railway Company would not be liable for damages occurring beyond its own line as to the cars of which it was the initial carrier.   Under the Carmack amendment the stipulation relied upon by the Gulf, Colorado & Santa Fe Railway Company, limiting liability to injury occurring on its own line, was void, which leaves the original contract in full force and effect, to be controlled by the common law rule, under which each company would be liable, it being a contract for through shipment, for any injury occurring on either line as a natural result from the negligent delay in shipment.   The United States Supreme Court's holding in the case quoted from is controlling upon us on that question; so that the Gulf, Colorado & Santa Fe Railway Company is liable under the original contract sued on for all the damage which occurred on the line of the Atchison, Topeka & Santa Fe Railway Company, as to such cars to which it stood in the relation of an initial carrier, and is liable under the original contract for through shipment as to all cars which were delivered to it by the Gulf, Beaumont

& Kansas City Railway Company, where it had notice when it accepted said cars from the Gulf, Beaumont & Kansas City Railway Company, the initial carrier, that it was a part of the Nelson shipment for the construction of the dam at Selden, New Mexico, and that the special damages pleaded would result from a delay in shipment.

It is strenuously insisted that the evidence is insufficient to show, and that there is no evidence to show, that Hershey, the general freight agent of the Gulf, Colorado & Santa Fe Railway Company, had authority to act as agent for the Atchison, Topeka & Santa Fe Railway Company in making the contract sued on, and that there is no evidence that such company was a party to such contract, or that it had any notice at the time the material was accepted for transportation of the probability that special damages would result from a negligent delay in the shipment. These questions are presented in the fifty-eight assignments of error contained in the petition for writ of error in numerous and varied ways. We have no authority in law to pass upon the sufficiency of the evidence. That authority is final in the Court of Civil Appeals. We have authority to decide whether there was no evidence to sustain said propositions, and we have examined each question critically. Without discussing all of such questions separately, we hold that all of them which assert that there is no evidence that Hershey acted in making the contract sued on as the agent of the Atchison, Topeka & Santa Fe Railway Company; and that there is no evidence that said company was a party to said oral contract; and that there is no evidence of notice to each of the companies sued, of the special damage which would result from delay in shipment of all the cars handled, should be overruled. We think there is evidence tending to support such allegations of the defendant in error.

The contention is made that the petition upon which the case was tried did not declare upon an oral contract for through shipment, but that it was grounded upon the bills of lading which were issued when the material was accepted for shipment. We overrule this contention. We think the petition plainly and clearly bases the cause of action upon an oral contract for through shipment.

We have carefully examined each and all of the other questions presented, but we find no such error as would require a reversal of this case. The judgments of the District Court and the Court of Civil Appeals are in all things affirmed.

*Affirmed.*