**CLEBURNE-PEANUT & PRODUCTS CO. v. MISSOURI, K. & T. RY. CO. OF TEXAS. (No. 104–2846.)**

(Commission of Appeals of Texas, Section A. May 12, 1920.)

1. **Carriers** ☞137—**Instruction entitling shipper to damages only in case peanuts were delivered in dried and cured condition held error.**

In action for damages to shipment of peanuts from contamination with coal oil and from furnishing of unventilated car, where there was evidence that the peanuts were valuable whether dried and cured or wet and uncured, and where there was no evidence that coal oil will not damage uncured as well as cured peanuts regardless of whether they are or become moldy, or whether a closed and unventilated car is proper conveyance for uncured peanuts, instructions that plaintiff was entitled to recover only if peanuts were delivered to carrier in dried and cured condition and could not recover if delivered in green and uncured condition, though they were thereafter damaged through carrier's negligence, *held* erroneous.

2. **Carriers** ☞111—**Carrier liable for damage to shipment of green and uncured peanuts.**

It was carrier's duty to furnish shipper a suitable car in which to transport its peanuts, whether they were green and uncured or dried and well cured; shipper being entitled to compensation for damages to shipment by reason of carrier's negligence regardless of whether peanuts were green and uncured at time of delivery to carrier.

3. **Carriers** ☞120—**Carrier not liable for damages resulting from defective condition of goods.**

In action against carrier for damage to shipment of peanuts, where it was claimed that the peanuts were delivered for shipment in green and uncured condition, carrier was entitled to have deducted from amount of damages any part of the depreciation in price resulting from the peanuts being loaded green; carrier not being liable for damages resulting from the inherent defect of the goods.

**4. Carriers ⊚⟹132 — Intrastate carrier must prove freedom from negligence contributing to damage.**

Carrier of intrastate shipments has burden of showing that it was free from any negligence contributing to the damage.

**5. Commerce ⊚⟹8(13)—Control of subject of damages to interstate shipments assumed by Carmack Amendment.**

By the Carmack Amendment (U. S. Comp. St. §§ 8604a, 8604aa), Congress assumed control of the subject-matter of all loss and damage to interstate shipments; the state laws and regulations in the rulings of state courts being superseded as to such shipments.

**6. Carriers ⊚⟹132—Burden of proof on shipper where damage resulted from inherent infirmity of goods.**

When it has been shown that damage resulted from inherent infirmity of the goods transported under circumstances not showing negligence, burden of proving negligence devolves upon the plaintiff under Carmack Amendment (U. S. Comp. St. §§ 8604a, 8604aa).

**7. Courts · ⊚⟹97(5)—Decisions of federal Supreme Court control as to liability for damage to interstate shipment.**

In view of Carmack Amendment (U. S. Comp. St. §§ 8604a, 8604aa), the state Supreme Court will adopt the rule of liability for damage to interstate shipment laid down by the United States Supreme Court, notwithstanding the state court is of the opinion that the contrary rule previously adhered to by the court is the sounder and more just rule.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by the Cleburne Peanut & Products Company against the Missouri, Kansas & Texas Railway Company of Texas. · Judgment for defendant was affirmed by Court of Civil Appeals (184 S. W. 1070), and plaintiff brings error. Reversed, and cause remanded to district court.

S. C. Padelford, of Cleburne, for plaintiff in error.

Huff & Chambers, for defendant in error.

TAYLOR, J. Suit by the Cleburne Peanut & Products Company, plaintiff in error, against the Missouri, Kansas & Texas Railway Company of Texas, defendant in error, for damages to 225 bags of shelled peanuts, shipped from Cleburne, Tex., to St. Jo, Mo. Trial resulted in verdict and judgment for defendant, which was affirmed by the Court of Civil Appeals. 184 S. W. 1070.

It was the plaintiff's theory of the case, as disclosed by its pleadings and the testimony, that the peanuts were delivered to defendant at Cleburne in good condition, and depreciated in value between the time of loading and their arrival at St. Jo, on account of heating and molding, and from contamination with coal oil; and that their damaged condition resulted from the negligent acts of defendant, in the following particulars: (1) Furnishing an unventilated car, the floor of which was saturated with oil; (2) delay of the shipment en route.

Defendant denied plaintiff's allegations, both as to damage and negligence; denied that plaintiff delivered the shipment to it in good condition; and alleged that the damage, if any, was the result of the inherent qualities of the peanuts, and was due to their wet, green, and uncured condition when loaded by plaintiff; that such condition of the shipment was known to plaintiff, and was not known to defendant.

The peanuts were shipped November 6th, and reached St. Jo November 12th. The brokers to whom consignment was made telegraphed plaintiff on the 14th that the peanuts had arrived and were contaminated with oil. This was the first notice plaintiff received of their arrival at destination. The next day plaintiff sent its agent to St. Jo, who upon arrival November 17th examined the shipment. He testified that he found it smelling like coal oil, and molded and heated. The brokers at St. Jo refused to accept the peanuts. Thereupon plaintiff reshipped them to Kansas City, where they were sold for $1,321.93 less than the brokers had contracted to pay for them.

There was testimony tending to prove that peanuts do not cure thoroughly during the season in which they are raised, and that plaintiff arranged with defendant's local agent for transportation of its products by "red ball" or "preferred freight," in order that they might reach their destination in the minimum time; that peanuts, if matured and in good condition when loaded, would go through from Cleburne to St. Jo without heating, regardless of whether well cured, if shipped in a well-ventilated car with that rapidity with which "red ball" shipments ordinarily moved. This was controverted by defendant. There was testimony tending to show that the peanuts were not only not well cured, but were green and damp when loaded. The car in which the shipment moved was closed and unventilated, and was loaded by plaintiff. Whether the floor was saturated with oil was an issue of fact.

The second, third, fourth, and fifth paragraphs of the charge disclose the theory upon which the court submitted the case.

In the second paragraph the jury was instructed that it was the duty of defendant to furnish plaintiff a suitable and proper car for the shipment of its freight; it being, in the language of the court, "in proper condition for shipment."

---

⊚⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

In the third paragraph, the jury was authorized to return a verdict for plaintiff, upon condition that it make, in substance, all of the following findings: (1) That defendant furnished an unsuitable car; (2) that the peanuts were delivered to defendant in good condition for transportation, and arrived at St. Jo in a damaged condition; (3) that the shipment was delayed; (4) that the damage was caused, either by the negligent failure of defendant to furnish a proper car, or by its negligent delay of the shipment en route; (5) that the damage was not caused by the green or undried condition of the peanuts when loaded.

Under the instructions contained in the fourth paragraph of the charge, all of the following findings, substantially, are essential to a recovery by plaintiff: (1) That the car furnished was impregnated with coal oil; (2) that the peanuts were loaded "dry and mature"; (3) that some or all of the peanuts on arrival at St. Jo were so scented or injured by oil as to cause a depreciation in price. The jury is instructed inferentially in the latter half of the paragraph that damage may be found by reason of injury to the peanuts by kerosene oil, regardless of whether they were loaded green. But neither this paragraph nor any part of the charge contained a direct instruction to find for plaintiff such damage as might have resulted from oil in the car, if any, if the peanuts when loaded were dry or cured.

In the fifth paragraph, the court instructed the jury to find for defendant if the peanuts heated and molded on account of being green or immature, and to so find regardless of whether the peanuts were impregnated or scented with oil.

[1] The condensed summary of the body of the charge makes apparent the erroneous theory under which the case was submitted, to wit, that plaintiff was entitled to recover only in the event the peanuts were damaged after being delivered to defendant in proper (dry and cured) condition for shipment; and that defendant was not liable if the peanuts were delivered to it for shipment green and uncured—regardless of whether they were thereafter damaged through its negligence.

[2] Under our view, it was the duty of defendant to furnish plaintiff a suitable car in which to transport its peanuts, whether they were green and uncured, or dry and well cured. Plaintiff was entitled to compensation for damage to the shipment, if any, if it resulted from defendant's negligence as alleged; and defendant, if negligent, would not be relieved from liability for damage proximately resulting therefrom, even if the shipment when received for transportation was not in first-class condition. There was evidence that the peanuts were valuable; whether dry and cured, or wet and uncured. They were rejected on arrival by the brokers to whom consigned, and there is evidence tending to prove they were damaged from two causes, to wit: (1) Molding from heat; and (2) scenting and injury from coal oil. There was evidence also that they were heated and molded because of their uncured and damp condition; but there was no evidence that coal oil will not damage uncured, as well as cured, peanuts, regardless of whether they are, or become, moldy—or that a closed and unventilated car is a proper conveyance for uncured peanuts.

[3] The court correctly instructed the jury, in the latter part of the fourth paragraph of the charge, that in allowing damage, if any, by reason of the oil, it should deduct therefrom any damage resulting from the peanuts being loaded green, if so loaded; but in the fifth paragraph the jury is told the verdict must be for the defendant if the peanuts molded on account of being green or immature. Defendant is not liable for any damage resulting from the inherent defects of the peanuts. If defendant performed without negligence its obligation and duty as a carrier, and the depreciation in price resulted from the condition of the peanuts when delivered for shipment, no damage could be recovered. If any part of the depreciation in price resulted from the inherent infirmity of the peanuts, such condition must be taken into consideration in computing any damage proximately caused by defendant's negligence. It was error, however, to instruct the jury in effect that plaintiff's right of recovery was conditioned upon his loading the peanuts upon the car in a dry and mature condition. The court erred, also, in instructing the jury to find for defendant if the peanuts molded because of being green, regardless of whether they were scented with oil.

It is necessary, in view of another trial, to determine upon whom the burden rests of showing, in the event the jury believes the peanuts when delivered for shipment were inherently defective, that the damage from heating and molding was caused or contributed to by defendant's negligence.

One of the exceptions to the carrier's liability is that if the property transported is damaged by reason of inherent infirmity, and without fault on the carrier's part, the carrier is not liable.

[4, 5] The rule in this state is that the carrier must bring itself fully within the exception, not merely by showing the damage resulted from the inherent defect of the goods, but by going further and showing that it exercised ordinary care to avoid the damage. In other words, the carrier has the burden of showing that it was free from any negligence contributing to the damage. Ryan & Co. v. M., K. & T. Ry. Co., 65 Tex. 13, 57 Am. Rep. 589; Mo. Pac. Ry. Co. v. China Mfg. Co., 79 Tex. 26, 14 S. W. 785. This is

still the rule as to intrastate shipments. The cases announcing the foregoing rule were decided, however, prior to the enactment of the Carmack Amendment. By the enactment of that amendment Congress assumed control over the subject-matter of all loss and damage to interstate shipments. State laws and regulations, and the rulings of state courts, were thereby superseded as to such shipments. Adams Exp. Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257.

The rule followed by the Supreme Court of the United States is that when it has been shown that damage results from inherent infirmity of the goods transported under circumstances not showing negligence, the burden of proving negligence devolves upon the plaintiff. Hutchinson on Carriers, vol. 3, sec. 1355; Southern Ry. Co. v. Prescott, 240 U. S. 632, 36 Sup. Ct. 469, 60 L. Ed. 836.

[6, 7] In view of the fact that liability in this case is predicated upon damage to an interstate shipment, and in recognition of the controlling force of the decisions of the United States Supreme Court in such cases, we are constrained in this instance to follow the national court rule, notwithstanding we think the established rule of this state the sounder and more just rule. G., C. & S. F. Ry. Co. v. Nelson, 108 Tex. 313, 192 S. W. 1059; Pacific Express Co. v. Krower, 106 Tex. 220, 163 S. W. 10.

We recommend that the judgments of the district court and Court of Civil Appeals be reversed, and that the cause be remanded to the district court for further trial.

PHILLIPS, C. J. We approve the judgment recommended in this case, and the holding of the Commission on the questions discussed.

---

⊚kömFor other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes