## WESTERN UNION TELEGRAPH CO. v. ROBINSON.  (No. 613.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 27, 1920.)

1. **Evidence** &#x26ab;&#x27a1;34, 46—**Judicial notice taken of resolutions of Congress, proclamations of President, and orders thereunder.**

Resolutions of Congress, proclamations of the President, and orders thereunder, are facts of which the courts, both state and federal, take judicial knowledge.

2. **Telegraphs and telephones** &#x26ab;&#x27a1;26¾, New, vol. 7A Key-No. Series — **Company receiving back property not liable for claims accruing during government control.**

A telegraph company receiving back its properties from the government under Order No. 3380 of July 30, 1919, of the Postmaster General, did not thereby assume or make its own or become liable for or upon any contract, obligation, claim, or cause of action which accrued during the government control, nor did the mere act of receiving back its properties, render the company liable for negligence of an employé during government control and use, or for any character of obligation, whether growing out of contract or tort, though compensation was made for such use.

3. **Appeal and error** &#x26ab;&#x27a1;1178(7) — **Appellate court will render judgment on reversal that trial judge should have rendered, though other persons might be made parties.**

It is the duty of appellate court to render such judgment on the undisputed facts as the trial judge should have rendered, where it clearly appears that the case was fully developed; and, where it clearly appears that no judgment can be rendered against defendant appellant, the court will not reverse and remand simply in order that other persons who might be liable be made parties defendant.

Appeal from District Court, Angelina County; L. D. Guinn, Judge.

Action by H. C. Robinson against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Young & Stinchcomb, of Longview, and Mantooth & Collins, of Lufkin, for appellant.

Kester W. Denman and W. B. O'Quinn, both of Lufkin, for appellee.

HIGHTOWER, C. J. The appellee, H. C. Robinson, filed this suit in the district court of Angelina county against the appellant, Western Union Telegraph Company, claiming damages by reason of mental anguish suffered in consequence of the alleged negligent failure on the part of appellant to promptly transmit and deliver to him a telegram sent by appellee's brother from Roanoke, Tex., to appellee at Lufkin, Tex., on May 9, 1919. The message was as follows:

"Roanoke, Texas, May 9, 1919.
"H. C. Robinson, Lufkin, Texas.
"Brother Willie died today at ten o'clock. Answer if you can come.
"[Signed]  E. J. Robinson."

E. J. Robinson is a brother of appellee, and Willie Robinson, whose death was announced by the message, was the brother of both of them.

Appellant's answer consisted of a general demurrer and general denial, and it also specially answered that at the time the message in question was delivered and accepted at the office of the Western Union Telegraph Company at Roanoke, Tex., appellant's entire telegraphic system, including its lines and all of its properties and instrumentalities connected with its business as a telegraph company, were in the exclusive possession, management, and control of the government of the United States, and that its said lines and properties were being managed, controlled, and operated at said time by said government as an agency of the government, and that all the employés, servants, and agents who received and handled said message were in the employ, management, and control of the government of the United States, and that if there was any negligence on the part of any such servants, agents, or employés in the transmission and delivery of said message, the same could not be imputed or charged to appellant, and that appellant was not liable for any damages suffered by appellee in consequence of such negligence, if any. This states, substantially, appellant's answer.

The case was tried before the trial judge without a jury and resulted in a judgment in favor of the appellee for $500. Findings of fact and conclusion of law were filed and are before us in the record. The following is the substance of the material facts found by the trial court:

That the Congress of the United States, in the exercise of its constitutional authority, by joint resolution of the Senate and House of Representatives, on July 16, 1918, authorized the President of the United States to supervise, take possession of, and assume control of any and all telegraph and telephone lines in the United States; that, in pursuance of such resolution, the President,

on July 22, 1918, issued a proclamation taking over all telegraph and telephone lines in the United States, and in such proclamation directed that the Postmaster General, Albert S. Burleson, should take charge of and operate the said telegraph and telephone lines for the United States government; that on August 1, 1918, said Postmaster General issued Order No. 1783, in which he stated that, in pursuance of the proclamation of the President of the United States, he had assumed possession, control, and supervision of the telegraph and telephone system of the United States, and directed that they be operated by the officers and agents theretofore operating the same; that on the night of July 31, 1918, all of the property of the Western Union Telegraph Company went into the hands of said Postmaster General, and the same began to be operated by him in pursuance of the resolution of Congress and the proclamation of the President, and thus continuing in his hands and under his authority and control until midnight of July 31, 1919, and that from midnight of July 31, 1918, to midnight of July 31, 1919, the entire property of the Western Union Telegraph Company was operated by said Postmaster General for the United States government, and that all tolls and revenues received by the said Western Union Telegraph Company were remitted to said Postmaster General, and that the Western Union Telegraph got none of the tolls and revenues made by it during that time; that from midnight July 31, 1918, to midnight July 31, 1919, all of the agents, employés, and servants of the Western Union Telegraph Company were the agents and employés of the United States government, and were under the direction, supervision, and control of said Postmaster General, and that they were not in any wise the agents or employés of the Western Union Telegraph Company; that by virtue of the proclamation of the President, as above stated, he took possession and assumed control and supervision of all of the property of the Western Union Telegraph Company, and every part thereof, and all materials and supplies, and directed that the supervision and direction, control and operation of such property be exercised through said Postmaster General, and that on July 31, 1918, the entire system of said company and all of its property was thus taken possession of by the President, for the use of the government, and that same was operated by and through said Postmaster General from July 31, 1918, to July 31, 1919, and that all current revenue and tolls received on account of the operation of said property of said company during said period of time was paid to the United States government and held subject to the order of said Postmaster General, and that during such period all agents and employés of said company were the agents and employés of the United States government, and were under the exclusive management and control of said government; that the appellee instituted this suit on August 28, 1919, after the property of the Western Union Telegraph Company had been turned back by the government to said company, and further found that, by virtue of the proclamation ordering the return of such property to the telegraph company, all contracts, obligations, claims, and causes of action which had accrued between July 31, 1918, and July 31, 1919, became the contracts, obligations, claims, and causes of action of the telegraph company; that said Postmaster General, on July 30, 1919, issued Order No. 3380, in which he directed that on midnight of July 31, 1919, all of the property of the telegraph and telephone companies in the United States be turned back into the possession of their respective owners, and directed that such companies close their books, showing operation under governmental control, at midnight on July 31, 1919, and that all books and accounts kept during the period of governmental control be preserved by such companies and continue under the control and supervision of William H. Lamar, chairman of the finance committee; that there was no provision in the order turning such properties back to such companies to the effect that any claims arising during governmental control should be assumed by the companies upon their taking charge of such properties.

[1] The foregoing facts found by the trial court, being resolutions of Congress, proclamations of the President, and orders thereunder, are such facts as the courts, both state and federal, will take judicial knowledge of. Railway Co. v. Nelson, 108 Tex. 305, 192 S. W. 1056; Walker v. Railway Co. (D. C.) 241 Fed. 395; Railway Co. v. Jarman, 138 S. W. 1131; Railway Co. v. Black, 87 Tex. 160. Therefore, as to any question of fact that might arise as to the contents of such resolutions, proclamations and orders, they will speak for themselves.

Appellant's first assignment of error challenges the following finding of fact made by the trial judge:

"I further find that all contracts, obligations, claims and causes of action which accrued between July 31, 1918, and July 31, 1919, became on July 31, 1919, by virtue of said proclamation replacing said telegraph system of the Western Union Company in the hands and under the control of its officers, agents and employés, the contracts, obligations, claims and causes of action of said Western Union Telegraph Company, by virtue of said proclamation of July 30, 1919."

Appellant's proposition under this assignment is:

"In a case where a telegraph company is sued for alleged negligence in the handling of a telegraph message, and the court finds that the message was handled during the time the property of the telegraph company was being operated by the United States government, and the property has been delivered back by the government to the telegraph company without providing that the contracts, obligations, claims and causes of action accruing during government control are to become obligations against the company, it is error for the court to find as a fact that when the properties were delivered back the contracts, obligations, claims and causes of action which accrued during government control, thereby became the contracts, obligations, claims and causes of action of the telegraph company."

The order of the Postmaster General returning to the telegraph and telephone companies their properties we copy as follows:

"Post Office Department, Washington.

"Order No. 3380.

"July 30, 1919.

"In accordance with the act of Congress. approved July 11, 1919, and by direction of the President, all of the telegraph and telephone systems, lines and properties, including all equipment thereof and appurtenances thereto whatsoever and all materials, and supplies, taken possession of or received, operated, supervised or controlled, by the Postmaster General under and by virtue of the joint resolution of Congress approved July 16, 1918, and the proclamation of the President of July 22, 1918, and are thereby ordered to be returned and delivered to the respective owners thereof, at midnight on July 31, 1919, and the supervision, possession, control and operation exercised by the Postmaster General under and by virtue of said joint resolution and proclamation of the President will cease and determine at that date and hour.

"All such telegraph and telephone companies are hereby directed to close their books as of midnight July 31, 1919, and to proceed promptly to collect all outstanding indebtedness and accounts arising out of the operation of such systems during the period of government control, and at the earliest practicable time to submit a full account to William H. Lamar, chairman of the finance committee, Wire Control Board. Each company with which a compensation agreement has been entered into or to which compensation has been awarded will, if its accounts show an excess over and above the compensation allowed, transmit such excess, together with a statement of account, within five days after the ascertainment of the amount due, to said William H. Lamar, chairman of the finance committee, Wire Control Board, in the form of a certified check or bank draft payable to A. S. Burleson, Postmaster General.

"All books and accounts kept during the period of government control shall be preserved by the respective companies and shall continue under the control and supervision of said William H. Lamar, chairman of the finance committee, Wire Control Board, and shall at all time be subject to examination by the auditors and accountants of the Wire Control Board.

"All companies under control of the government with which compensation has not been fixed or concluded by agreement or by operation of Orders Nos. 2980 and 3175 should at once take up with said William H. Lamar, chairman of the finance committee, Wire Control Board, the matter of fixing such compensation, so that the Postmaster General may make his report to Congress upon the operation of the various wire systems on or before November 1, 1919, as required by law.

"A. S. Burleson, Postmaster General."

[2] We find nothing in this order to warrant the finding of fact, if it be such, by the trial court, that the appellant, on receiving back its properties under this order, thereby assumed or made its own, or became liable for or upon, any contract, obligation, claim, or cause of action which accrued during government control of its properties.

There is no such provision in the order, either express or implied, and we sustain, therefore, the assignment challenging such finding.

The second and all following assignments challenge the trial court's conclusion of law, which was as follows:

"I conclude from the evidence and the law that the property of the Western Union Telegraph Company being operated by the United States government, through its Postmaster General, at the time the message in question was handled, did not and does not relieve the said company of liability in this case; it having assumed such responsibility and liability."

It will be observed that the trial court concluded, as a matter of law, that the appellant had assumed liability in this case; but the trial court's view that appellant assumed the liability asserted in this case is based upon the conclusion of the trial judge that appellant assumed such liability solely for the reason that its properties had been turned back into its hands by virtue of the order of the Postmaster General hereinbefore quoted, and that appellee's suit against appellant was not filed until such properties had been returned to appellant. It is manifest from the entire record that the trial judge in this case has held appellant liable in damages to appellee for the negligent failure, if there was negligence on the part of the agents and employés of the United States government in failing to promptly transmit and deliver to him the telegram mentioned above. When that telegram was delivered at Roanoke for transmission and delivery over the wires of the Western Union Telegraph Company, its entire telegraphic system in the United States was in the hands of the United States government, and was under the exclusive control and management of that government, and was being operated by the government,

as one of its agencies, and appellant, the Western Union Telegraph Company, had no part whatever in the operation, management, or control of the business conducted by the government over its lines, nor any management, control, or direction over any of the employés who handled this message, but such employés or servants were also in the exclusive control and management of the United States government.

Upon such state of facts, we know no principle of law that would render appellant liable for the negligent failure, if there was such, to deliver to appellee the message in question. The fact that compensation to appellant was provided by the government for the use of its properties cannot alter the case, because it was only just and right that compensation should be made for the use of such properties, but it would not follow therefrom that upon the properties being returned, as they are certainly should have been, to appellant, appellant, by the mere act of receiving back its own properties, should be held responsible in damages for negligence or for any character of obligation, whether growing out of contract or tort, made or committed while such properties were being operated by the government for its own use and benefit. Dakota Central Tel. Co. v. State of South Dakota, 250 U. S. 163, 39 Sup. Ct. 507, 63 L. Ed. 910, 4 A. L. R. 1623; Cable Co. v. Burleson, 250 U. S. 360, 39 Sup. Ct. 512, 63 L. Ed. 1030; Postal Tel. Co. v. Warren-Godwin Lbr. Co., 251 U. S. 27, 40 Sup. Ct. 69, 64 L. Ed. ——; Telegraph Co. v. Conditt, 223 S. W. 234; Telegraph Co. v. Johnson (C. C. A.) 224 S. W. 203; Telegraph Co. v. Wallace, 227 S. W. ——,[1] opinion filed by Galveston Court of Civil Appeals on February 20, 1920; Hatcher v. Railway Co. (D. C.) 258 Fed. 952; Mardis v. Hines (D. C.) 258 Fed. 945.

It follows from what we have said that this court is of the opinion that no liability on the part of the Western Union Telegraph Company was or could be established by the appellee in this case, and that all assignments of error attacking the judgment should be and they are sustained, and it will be so ordered.

[3] It has been suggested by counsel for the appellee that, in the event this court should reverse the judgment, the case should be remanded for another trial, in order that appellee may have an opportunity to make other parties defendants, if necessary, in the case. We think that we should not grant this request, because it is clearly the duty of this court to render such judgment upon the undisputed facts as the trial judge should have rendered, where it clearly appears that the case was fully developed, in so far as any liability could be asserted against the appellant, and it is therefore the duty of this court to reverse and render the judgment in favor of appellant, and it is accordingly so ordered.

Reversed and rendered.

[1] Rehearing pending.