## JONES *v.* BRIM.

ERROR TO THE SUPREME COURT OF THE STATE OF UTAH.

No. 621. Submitted January 11, 1897. — Decided February 1, 1897.

Section 2087 of the Compiled Laws of Utah, which provides that " Any person who drives a herd of horses, mules, asses, cattle, sheep, goats or swine over a public highway, where such highway is constructed on a hillside, shall be liable for all damage done by such animals in destroying the banks or rolling rocks into or upon such highway," is not in conflict with the Constitution of the United States.

THIS action was originally instituted in June, 1893, before a justice of the peace in the then Territory of Utah, to recover the sum of ten dollars for damages alleged to have resulted from destroying the banks on the side of and from rolling rocks into and upon a public highway situated on a hillside, caused by a band of sheep owned by the defendant while being driven upon such highway.

The Supreme Court of the Territory, on review of the judgment of a District Court in favor of the defendant, held that the statute upon which the cause of action was founded was valid, adjudged that the petition stated a cause of action, and remanded the cause to the District Court. 11 Utah, 200. Subsequently, the Supreme Court of the State affirmed a judgment of the District Court, which had been entered for the amount claimed. 41 Pac. Rep. 282. The defendant sued out this writ of error.

*Mr. Franklin S. Richards* and *Mr. Joseph T. Richards* for plaintiff in error.

*Mr. Parley L. Williams* for defendant in error.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

The sole question presented for our consideration is whether section 2087 of the Compiled Laws of Utah (vol. 1, p. 743) is in conflict with the Constitution of the United States. The section reads as follows:

"SEC. 2087. Any person who drives a herd of horses, mules, asses, cattle, sheep, goats or swine over a public highway, where such highway is constructed on a hillside, shall be liable for all damage done by such animals in destroying the banks or rolling rocks into or upon such highway."

Plaintiff in error claims that the law in question deprives the class of persons mentioned in it of their property without due process of law, and denies to them the equal protection of the laws; and that, consequently, its provisions contravene that portion of the first section of the Fourteenth Amendment

to the Constitution of the United States, which provides that "No State shall deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The denial of the equal protection of the laws is asserted to consist in an unjust and illegal discrimination against persons who "drive herds of horses, mules, asses, cattle, sheep, goats or swine over a public highway, where such highway is constructed on a hillside," by making them liable for damage done by them in using the highway, while all other persons are permitted to use it without liability.

We premise that the clause of the Fourteenth Amendment of the Constitution referred to was undoubtedly intended to prohibit an arbitrary deprivation of life or liberty, or arbitrary spoliation of property. *Barbier* v. *Connoly*, 113 U. S. 27. But it does not limit, nor was it designed to limit, the subjects upon which the police power of a State may be lawfully exerted. *Minneapolis Railway Co.* v. *Beckwith*, 129 U. S. 26, 29. Embraced within the police powers of a State is the establishment, maintenance and control of public highways. *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650, 661. The legislation in question would clearly seem, therefore, to come within the narrowest definition of the police power, and be properly classed as a reasonable regulation incident to the right to establish and maintain such highways. The statute is analogous in principle to the one considered in the case of *St. Louis & San Francisco Railway Co.* v. *Mathews*, 165 U. S. 1, decided at this term, wherein it was held that a law of Missouri was valid which made every railroad corporation owning or operating a railroad in the State absolutely responsible in damages for the property of any person injured or destroyed by fire communicated by its locomotive engines. That decision was based upon the right of a State, in the exercise of its police power, to classify occupations with relation to their peculiar liability to cause injury to property, from the dangerous nature of the implements employed in the business. The legislation here in question undoubtedly proceeds upon this theory. The stat-

ute was manifestly not designed to impóse a liability upon the owners of herds for damage occasioned by the mere passage of a drove of animals over a hillside road. If these herds were kept in the road, the banks would not be caved or rocks rolled into the travelled way. The damage contemplated must, therefore, be occasioned by animals going outside the beaten roadway. In effect, the legislature declared that the passage of droves or herds of animals over a hillside highway was so likely, if great precautions were not observed, to result in damage to the road, that where this damage followed such driving, there ought to be no controversy over the existence or non-existence of negligence, but that there should be an absolute legal presumption to that effect resulting from the fact of having driven the herd. The confusion of thought involved in the reasoning of the plaintiff in error not only results from failing to consider that the statute simply creates a conclusive presumption of negligence from a particular state of facts, but also is caused by treating the law as one imposing a liability on the owners of herds when liability does not also exist as to others. It is reasonable to infer that the lawmaker contemplated that if only a few animals were driven over a road and damage resulted from their being allowed to leave the road and go upon the sides, so as to cause injury, there would be no practical difficulty in establishing the want of due care on the part of those in charge of the animals driven, and, therefore, there was no necessity in such case of creating a conclusive presumption of negligence, whilst, on the other hand, the driving of a herd might require such a degree of care and leave room to so much question as to whether due care had been taken that where damage resulted the conclusive presumption of neglect should be entailed.

It was obviously the province of the state legislature to provide the nature and extent of the legal presumption to be deduced from a given state of facts, and the creation by law of such presumptions is after all but an illustration of the power to classify. When the statute is properly understood, therefore, the argument of the plaintiff in error amounts to an assertion that the whole subject of the probative force

to arise by operation of law, from any specified state of facts, is, in every sense, by the effect of the Fourteenth Amendment, removed from the jurisdiction of the local authorities.

The statute being general in its application, embracing all persons under substantially like circumstances, and not being an arbitrary exercise of power, does not deny to the defendant the equal protection of the laws. *Lowe* v. *Kansas*, 163 U. S. 81, 88; *Duncan* v. *Missouri*, 152 U. S. 377. So, also, as the statute clearly specifies the condition under which the presumption of neglect arises and provides for the ascertainment of liability by judicial proceedings, there is no foundation for the assertion that the enforcement of such ascertained liability constitutes a taking of property without due process of law.

*Judgment affirmed.*