HATCHER & SNYDER v. ATCHISON, T. & S. F. RY. CO.

(District Court, D. Colorado.  ·June 25, 1919.)

No. 6849.

RAILROADS ⬤⟶5½, New, vol. 6A Key-No. Series—FEDERAL CONTROL—ACTIONS.
    Where the federal government has taken over the entire operation of
    a railroad under Act Aug. 29, 1916, § 1 (Comp. St. 1918, § 1974a), and Act
    March 21, 1918, so as to exclude the company from active management,
    the company cannot be made liable for negligence or injuries to ship-
    ments, though section ·10 of the Act of 1918 (Comp. St. 1918, § 3115¾j),
    subjects the carrier to all laws and liabilities, whether arising under
    state or federal law, or at common law, and providing that actions at
    law and suits in equity are to be brought by and against such carriers,
    and judgments rendered as provided by law.

At Law.   Action by Hatcher &· Snyder, a copartnership composed of J. S. Hatcher and W. A. Snyder, against the Atchison, Topeka & Santa Fé Railway Company.  On motion to substitute as defendant the Director General of Railroads and to dismiss as to the Railway Company.  Motion denied.

Melville & Melville, of Denver, Colo., for plaintiff.
Henry T. Rogers and Erl H. Ellis, both of Denver, Colo., for defendant.

LEWIS, District Judge.  This is an action brought to recover a large amount as damages on account of the alleged negligence of the railroad company in an interstate shipment of about ten thousand sheep.

The plaintiffs resist the motion of the defendant to substitute the Director General of Railroads in its stead, in accordance with General Orders Nos. 50 and 50a, made by the Director General.  The plaintiffs have signified their consent to the Director General of Railroads coming in as a defendant, but oppose the dismissal of the case against the railroad company.  He has not asked to come in as a codefendant.

The complaint sets out a verbatim copy of the contract for shipment.  It appears to have been executed by the railroad company and the shipper; and the answer admits the execution of the contract and the receipt of the sheep.  It, however, denies all allegations of negligence on its part and that of its employés, as charged in the complaint.  When the motion was called up the question arose between counsel and the court as to whether there could be any liability on the part of the railroad company for acts complained of in operation of the road during Federal control, it appearing from the· complaint that the shipment was made during that time, to-wit, June 10, 1918.  The court expressed a doubt .as to such liability, and plaintiffs' counsel have filed a brief.·  At that time the construction of the applicable

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Acts of Congress (Act Aug. 29, 1916, c. 418, 39 Stat. 619, and Act March 21, 1918, c. 25, 40 Stat. 451 [Comp. St. 1918, §§ 3115¾a–3115¾p]) by the Supreme Court in Northern Pacific v. North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. ——, was not at hand. Court and counsel were in agreement that if the Congressional Acts only gave the right and power of a superintending unification and control to the President over railway companies and their properties, and if the President and the Director General went no further, and left the operation of the roads to the companies that owned them, there could be no doubt of liability in such a case as this. But if the Acts contemplated more, and gave to the President and through him to the Director General, either expressly or by necessary implication, the right to take exclusive possession of the roads and operate them for the time being as a Governmental agency, or if such exclusive possession and operation had been taken even without Congressional authority, liability would be seriously doubted.

But since the opinion in the North Dakota case there is no further doubt as to the extent of the power given the President by the Congressional Acts. In construing the Acts and the Proclamation of the President of December 26, 1917 (Comp. St. 1918, § 1974a, note), the court in that case said:

"No elaboration could make clearer than do the act of Congress of 1916, the proclamation of the President exerting the powers given, and the act of 1918 dealing with the situation created by the exercise of such authority, that no divided but a complete possession and control were given the United States for all purposes as to the railroads in question. But if it be conceded that despite the absolute clarity of the provisions concerning the control given the United States, and the all-embracing scope of that control, there is room for some doubt, the consideration of the general context completely dispels hesitancy. How can any other conclusion be reached if consideration be given the comprehensive provisions concerning the administration by the United States of the property which it was authorized to take, the financial obligations under which it came and all the other duties and exactions which the act imposed, contemplating one control, one administration, one power for the accomplishment of the one purpose, the complete possession by governmental authority to replace for the period provided the private ownership theretofore existing."

And we know, as a matter of public information, that the construction there given as to what was intended by Congress should be done has in fact been done. The railroad companies have been entirely excluded from participation in the operation of their properties. They receive none of the income from them. It goes to the Government. They have no voice in the employment and discharge of men engaged in the upkeep and repair of their roads and rolling stock, and the operation of trains. All of their properties, of every kind, needful for transportation purposes have been taken over by the Government, and their possession and operation rest in the exclusive control of the Director General.

The plaintiffs' contention is based at last upon section 10 of the Act of March 21, 1918 (Comp. St. 1918, § 3115¾j). My view as to the part of that section relied on is so clearly expressed in Vaughn's Case, 81 South. 417 (Alabama Court of Appeals, March 18, 1919), cited in the plaintiffs' brief, that I quote the language used:

"The only authority for suing a carrier while under Federal control must be rested upon the act of Congress which subjects them 'to all laws and liabilities as common carriers, whether arising under State or Federal laws, or at common law,' with certain exceptions, and provides that 'actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law,' etc. U. S. Comp. Stat. 1918, pp. 456–458. And the validity of this statute is sustainable on no other theory than that the transportation companies are operating their respective systems under Federal control. If such companies are in no way connected with the operation of their respective transportation systems, we submit that it would not be within the power of Congress to subject them to liability and suits thereon for the torts, miscarriages, and defaults of the employés of the Federal Government. Such an act would be an arbitrary exercise of legislative power contrary to the established principles of private rights and distributive justice and tantamount to a denial of due process of law. Zeigler v. S. & N. A. R. R. Co., 58 Ala. 594; Mobile Light & R. R. Co. v. Copeland' & Sons, 15 Ala. App. 235, 73 South. 131; Bank of Columbia v. Okley, 4 Wheat. 235 [4 L. Ed. 559]; Hurtado v. California, 110 U. S. 516, 4 Sup. Ct. 111, 292, 28 L. Ed. 232; Dent v. West Virginia, 129 U. S. 114, 9 Sup. Ct. 231, 32 L. Ed. 623; Leeper v. Texas, 139 U. S. 462, 11 Sup. Ct. 577, 35 L. Ed. 225; Giozza v. Tiernan, 148 U. S. 657, 13 Sup. Ct. 721, 37 L. Ed. 599; Jones v. Brim, 165 U. S. 180, 17 Sup. Ct. 282, 41 L. Ed. 677; Maxwell v. Dow, 176 U. S. 581, 20 Sup. Ct. 448, 494, 44 L. Ed. 597; 6 Rul. Cas. Law, pp. 433–446, embracing paragraphs 430 to 442, on Constitutional Law.

"On the other hand, if the carriers are operating under Federal control and are agencies of the government, the authority of Congress to impose liability on the carriers for the torts of their employés is clearly sustainable on the theory that such responsibility encourages caution on the part of the carriers and their employés, promotes efficiency and safeguards the interests of the government and the general public.

"There is no proof in this case that the railroad administration, in the exercise of Federal control, has excluded the transportation companies from the exercise of their functions in the operation of their respective systems, and we cannot assume that it has done so contrary to the manifest purpose and spirit of the authority conferred by the act of Congress and the proclamations of the President."

That court, however, appears to have taken the view that the Congressional Acts only authorized a superintending control and management by the Government of the companies and their roads, and expressly said that there was no evidence in the case before them showing that the companies had been excluded "from the exercise of their functions in the operation of their respective systems," which is not in accord either with the construction of the Acts given in the North Dakota case nor with the actual facts now of common knowledge. Certainly there is no power in Congress to make A. liable and suable for the acts of B. Fundamental principles of justice cannot be overturned by legislative fiat, to say nothing of Constitutional guarantees. Non-liability of the company was sustained at nisi prius in Schumacher v. Pennsylvania R. R. Co., 175 N. Y. Supp. 84. The construction of the Act there given is in accord with that in the Dakota case, and the reasoning on which the conclusion was reached appears to me sound.

However, plaintiffs have a right to prosecute their case to final judgment against the railroad company, and in a sense the views above expressed may be premature. Indeed, they may be greatly modified at the final hearing. They are given now only that parties may be advised as to the present attitude of the court on the question raised

when the motion was up. Further, a consideration of the effect of the answer may render wholly inapplicable to this case the views above expressed.

The motion to substitute the Director General of Railroads and dismiss the case as to the railway company must be denied