**POLAR ICE CREAM & CREAMERY COMPANY, Plaintiff,**

v.

Charles O. ANDREWS, Jr., Chairman, Alex Shaw, Jackson Logan, Robert G. Carter, Mrs. Charlotte Tomlinson, John H. Cone and Dr. James Acree, as and constituting the Florida Milk Commission, and Florida Milk Commission, an instrumentality of the State of Florida, Defendants.

Civ. A. No. 851.

United States District Court
N. D. Florida,
Tallahassee Division.

July 26, 1962.

Philip D. Beall, Beall & Caro, Joe J. Harrell, Jones & Harrell, Pensacola, Fla., J. A. McClain, Jr., Mabry, Reeves, Carlton, Field & Ward, Tampa, Fla., for plaintiff.

Mallory E. Horne, Marion D. Lamb, Jr., Horne & Rhodes, Tallahassee, Fla., for defendants.

Before JONES, Circuit Judge, and DeVANE and CARSWELL, District Judges.

CARSWELL, District Judge.

Jurisdiction in this cause is predicated upon an averment of a constitutional question and jurisdictional amount. Plaintiff is a Florida corporation located in Pensacola, Florida, and engaged in the distribution of milk and milk products. Defendant is the Florida Milk Commission, an agency of the State of Florida.

The Pensacola Milk Marketing Area came under the control of the defendant on November 21, 1961, after a favorable vote by the producers and producer-distributors of that area as prescribed by Section 501.20, Florida Statutes. F.S.A. Thereafter, the defendant passed a number of orders having to do with the classification of milk, minimum prices for the sale of milk, base percentages for producers, and other administrative details for fixing and maintaining a fixed price for milk.

Testimony was taken and arguments heard with reference to the following issues:

1. Whether Chapter 501, Florida Statutes, F.S.A., and the regulations and orders of defendant, as applied to milk delivered by plaintiff to military reservations, are unconstitutional.

2. Whether the provisions of Chapter 501, Florida Statutes, F.S.A., and the regulations and orders of the defendant, as applied to plaintiff, impose an undue burden upon interstate commerce, and are therefore unconstitutional.

3. Whether the provisions of Chapter 501, Florida Statutes, F.S.A., and the regulations and orders of the defendant, as applied to plaintiff, violate his constitutional rights of freedom of contract, due process, and equal protection of the law.

These issues are taken in order.

1. Plaintiff makes several allegations concerning the application of Chapter 501, Florida Statutes, F.S.A., and defendants' regulations and orders to "military milk" (milk delivered to United States military installations). Plaintiff first attempted to show that the regulatory fee imposed on milk distributed by plaintiff to military installations is a tax imposed by the State of Florida,

and, therefore, violates the supremacy clause (Article I, Section 8, Clause 17) of the United States Constitution. However, the finding of this Court is that the fifteen-one hundredths (15/100ths) of one cent per gallon imposed by the defendant is not a revenue raising device. It is in the nature of a regulatory fee based upon the privilege of doing business in the State of Florida, and not a tax upon milk.[1] Due to the above finding and the absence of any showing on this record that the amount of the fee imposes an undue burden upon interstate commerce, we conclude that the imposition of the fee upon the plaintiff is proper, even though plaintiff delivers milk to United States military installations.[2]

Plaintiff's second objection concerning "military milk" centers around the Federal Procurement Statutes.[3] Plaintiff attempted to show that the provisions of the regulations and orders of the defendant and the provisions of Chapter 501, Florida Statutes, F.S.A., violate the Federal Procurement Statutes, and are, therefore, invalid under Article VI, clause 2, of the United States Constitution. In support of this contention plaintiff relies upon the case of United States v. Paul, D.C., 190 F.Supp. 645. This case is now pending in the United States Supreme Court, 368 U.S. 965, 82 S.Ct. 437, 7 L.Ed.2d 394. We cannot anticipate the total effect of the decision forthcoming from the Supreme Court; however, it appears to us that the Paul case does not present a comparable situation. In Paul the court concluded that:

"(T)he California Milk Stabilization Act 'places a prohibition on the Federal Government' within the meaning of the Public Utilities case (Public Utilities Commission of State of Cal. v. United States, (1958) 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed. 2d 470), and, therefore, so conflicts with the federal procurement stat-

utes and policy as to be invalid under the Supremacy Clause, Art. VI, Sec. 2."

The distinguishing factor between the Paul case and the case at bar is that in Paul there was a direct imposition by the state statute upon the Federal Government acting in its capacity of a consumer, by setting a minimum price for the sale of milk and imposing penalties on the seller *and* the consumer for its failure to maintain this minimum price. There is no showing here of any restriction placed upon the price paid by the Federal Government for milk purchased for military installations. Indeed, there is no proof of any restriction upon plaintiff from selling milk to military installations at any price agreeable to plaintiff and its customer, regardless of whether the military installation is located in the State of Florida or any other state. Further, there is no proof of any limitation imposed on the price that a customer must pay the plaintiff, be the customer military or civilian. For the above reasons the Court is of the opinion that the regulations, orders, and provisions of Chapter 501, Florida Statutes, F.S.A., as applied to plaintiff under the facts in this case, do not violate the Federal Procurement Statutes.

2. Plaintiff contends that the provisions of Chapter 501, Florida Statutes, as applied to him, place an undue burden upon interstate commerce. Plaintiff sought to prove that the "base plan" as set up by the statutes, and the orders and regulations of defendant discriminate against out-of-state producers, and therefore, restricts interstate commerce. Plaintiff further contends that the base plan, or base formula, as set up by the defendants' regulations requiring plaintiff to purchase all the milk supplied by his producers operates as a restraint of trade in interstate commerce. This is so, it is urged, because after purchasing

---

1. Section 501.09, Florida Statutes, F.S.A. 1956 Op.Atty.General of Florida 056–43, Feb. 16, 1956.

2. Texas Co. v. Brown, 258 U.S. 466, 42 S.Ct. 375, 66 L.Ed. 721. Baldwin v. G. A.

F. Seelig, Inc., 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032.

3. Armed Forces Procurement Act of 1947, 62 Stats. 22, 10 U.S.C. § 2301 et seq.

locally produced milk at sixty-one cents (61¢) per gallon plaintiff has reduced his financial ability to purchase out-of-state milk at a lower price with the practical result of the regulation preventing him from buying and selling out-of-state milk on a free market.

■ While it may be true that the purpose of the Florida Statute is to assist and protect Florida milk producers, this does not necessarily make the statutes unconstitutional. It must be shown that alleged discrimination against out-of-state producers is a burden upon interstate commerce or actually restricts interstate commerce.[4]

Plaintiff relies most heavily upon the case, Baldwin, Comm. of Agriculture & Markets, et al. v. G. A. F. Seelig, Inc., 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032, for the proposition that Florida Statute Section 501.13(8) F.S.A. is unconstitutional as a restraint on interstate commerce. In that case the plaintiff, Seelig, Inc., a New York milk distributor, purchased milk in Vermont at a lower price than required by New York statute. Ninety percent of the milk was sold to customers in the original cans, and ten percent was removed from the cans, bottled and sold to customers in New York City. The New York statute (which is identical to F.S. § 501.13(8) F.S.A.) provided that there should be no sale within New York of milk purchased outside New York unless the price paid to the out-of-state producer was one that would be lawful in a like transaction within the State of New York. The court restrained enforcement of the Act insofar as sales made by Seelig while the milk was in the original cans or packages, but refused to grant an injunction as to milk removed from the original cans and thereafter sold in bottles. The United States Supreme Court upheld the action of the trial court in restraining the enforcement of the act as to the milk in original packages and further held that it should have granted the final decree as to the rebottled milk also, since New York had no power to regulate the prices of milk in Vermont, and held that New York could not prevent the introduction of Vermont milk of wholesome quality into New York. The Court stated that New York's refusal to allow the sale of milk purchased at a lower price in Vermont amounted to a barrier to traffic between one state and another as effective as a custom duty.

The facts here adduced simply do not reflect a comparable state of affairs concerning this plaintiff and the Florida Milk Commission. There is no such application of the statute in this case.

■ It is a settled principle that the court has authority to determine whether a statute enacted by a state legislature is or is not constitutional. However, in order to justify a pronouncement that a legislative act is unconstitutional the case must be so clear as to be free from doubt.[5] While courts will pass on the validity of statutes when such a determination is necessarily involved, unnecessary decisions will be avoided,[6] and courts will not assume to pass on constitutional questions unless properly before them.[7] The constitutionality of a statute will not be considered and determined by the courts as a hypothetical question,[8] and this is what the plaintiff would have us do. In Baldwin the court found that the State of New York was attempting to regulate the price of milk in the State of Vermont. No such situation exists in the present case. Neither the regulations and orders of the defendant nor the proof presented by the plaintiff upon trial in this action show that the plaintiff is restricted from sell-

4. Milk Control Board v. Eisenberg Farm Products, 306 U.S. 346, 59 S.Ct. 528, 83 L.Ed. 752.

5. Powell v. Pennsylvania, 127 U.S. 678, 8 S.Ct. 992, 1257, 32 L.Ed. 253.

6. Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598.

7. Champlin Refining Co. v. Corporation Comm., 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062.

8. Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143.

ing milk to consumers at any price agreeable to him and his customer. The defendant does not attempt to regulate the price that the plaintiff pays his out-of state producers, nor do the regulations restrict plaintiff from purchasing out-of-state milk in any amount or for any price. This contention is without merit.

3. Plaintiff complains, finally, that Chapter 501, Florida Statutes, F.S.A., and the regulations and orders of the defendant deprive it of its liberty of contract and property without due process of law, and deny him equal protection of the law. The rationale of plaintiff on the undisputed facts is to the effect that:

a. Plaintiff is required to take all milk tendered by its Florida producers at fixed prices and is given no assurance of any rate of return. Therefore, the regulatory scheme of the defendant is one-sided and results in violation of due process, and denies equal protection of the law.

b. The statutory and commission imposed restrictions and requirements deprive the plaintiff of its liberty of contract in that it is ordered to take all milk of its Florida producers, and is forced into contractual relationship created solely by the defendant, and plaintiff is not free to terminate this relationship except by showing just cause acceptable to the defendant commission.

The liberty of contract is the freedom from arbitrary restraint not immunity from reasonable regulations imposed in the interest of the community.[9] It is a well settled rule that the state may lawfully impose such restrictions in the exercise of its police power.[10]

The principle of due process of law has been said to secure the citizen against any arbitrary deprivation of his rights,[11] and is a limitation upon arbitrary power and a guaranty against arbitrary legislation.[12] However, the states are not deprived of the power to regulate for the public welfare, but merely required to insure that the end be accomplished by methods consistent with due process.[13]

Equal protection of the laws like due process is perhaps not capable of precision in its multifold applications, however, the guiding principle is often stated as requiring that all persons be treated alike under like circumstances and conditions.[14] Control over the business of producing or dealing in milk products is acknowledged to be within the police power of the state, and price regulations in that industry have been upheld in a number of decisions as not violating the constitutional right of equal protection of the law.[15]

From the above it is apparent that the real issue to be determined is whether or not the regulations and orders of the defendant and the provisions of Chapter 501, Florida Statutes, F.S.A., as applied to plaintiff are a valid exercise of the State's police power. The Florida Supreme Court has on at least two occasions expounded on this question and upheld the statute.[16] We agree with that courts' statement in Shiver v. Lee, Fla., 89 So.2d 318, at page 321:

> "We have never found a stronger finding of fact and statement of policy as the basis for regulating and administering a great industry than that embodied in the two paragraphs preceding this for control of the milk industry. Chapter 19231, Acts of 1939, from which Chapter 501, Acts of 1953, was in the main drawn, was a complete departure

9. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703.

10. Id.

11. Jones v. Brim, 165 U.S. 180, 17 S.Ct. 282, 41 L.Ed. 677.

12. Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940.

13. Id.

14. Hartford Steam Boiler Inspection & Insurance Co. v. Harrison, 301 U.S. 459, 57 S.Ct. 838, 81 L.Ed. 1223.

15. Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940.

16. Shiver v. Lee, Fla., 89 So.2d 318; Borden Co. v. Odham, Fla., 121 So.2d 625.

from the previous milk control acts, in that it recognized the necessity for continuous control and supervision of the milk industry. One cannot read the findings of fact and statement of policy without being convinced that the paramount purpose of the legislature was to invoke the police power for protection of the public health, safety and welfare as well as the welfare of those engaged in the milk industry. Every legislature since said act was passed has amended and strengthened it and the 1955 legislature refused to repeal or modify it."

and at page 323:

"A casual reading of the legislative findings shows that the milk industry had through devious means become a sick business, that an adequate supply of fresh, wholesome milk for the public had become imperiled and that it was necessary for the protection of the public, the consumer and producer to impose rigid restrictions and price fixing. It would be difficult to point out a more convincing case for legislative intervention. * * *"

We find from the evidence adduced at the trial that the plaintiff has failed to sustain the burden of proof that there has been an illegal application of this power of the Milk Commission upon this plaintiff. It is elementary, but perhaps worth repeating, that such power may be unlawfully applied in another instance, but in all instances the proof must be made.

It is the duty of the court to sustain police measures unless it is clearly, plainly and palpably in violation of the Constitution.[17] An earnest conflict of serious opinion does not suffice to bring such an act within the range of judicial cognizance.[18] At best plaintiff's contentions are an earnest conflict of serious opinion, and the proof offered to sustain these contentions is quite insufficient to warrant the relief sought, and judgment is accordingly entered by appropriate order for the defendant.

The foregoing is adopted by this Court as findings of fact and conclusions of law.

17. Euclid, Ohio, v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303.

18. Erie R. R. Co. v. Williams, 233 U.S. 685, 34 S.Ct. 761, 58 L.Ed. 1155.