## Commonwealth v. Bundrant

*J. Craig Cox,* Assistant District Attorney, for the Commonwealth.

*S. Sanford Kantz,* for the defendant.

CAIAZZA, *J.* January 24, 1983—Fred Bundrant was driving his truck on Route 551 in Lawrence County, Pa., which has a vehicle weight restriction, when he was stopped by State Trooper Ronald C. Snyder, who was on weight duty with Michael Hurst, a certified weighmaster. Trooper Snyder and Michael Hurst took the defendant, Bundrant, to Metcoa Corporation to weigh the truck on Metcoa's private scales. Mr. Bundrant's truck was found to be 53,100 pounds over the allowable weight. He was summarily convicted under 75 P.S. §4902(a);[1] his

---

1. The Act of June 17, 1976, P.L. 162, No. 81, §1 et seq.

conviction was timely appealed to the Court of Common Pleas, Lawrence County, Pa.

The issues initially presented here are these: (1) is probable cause required under the fourth amendment to stop and weigh a truck on a restricted highway; (2) was the use of private scales permissible when the Department of Transportation's portable scales were readily available and not utilized; and, (3) must a defendant be advised of his right to a reweigh on Department of Transportation scales after a weighing on private scales.

Pennsylvania Statutory Law[2] authorizes a police officer to stop any vehicle to be weighed. It has been advanced that the police officer needs probable cause "[W]here the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information were sufficient to warrant a man of reasonable caution and belief to conclude that the suspect has committed or is committing a crime." Whitely v. Warden, 401 U.S. 560, 566, 91 S.Ct. 1031, 28 L. Ed. 2d 306 (1971); Henry v. United States, 361 U.S. 98, 100-102, 80 S.Ct. 168, 4 L. Ed. 2d 134 (1959); Commonwealth v. Rush, 459 Pa. 23, 326 A.2d 908 (1974); Commonwealth v. Kenney, 449 Pa. 562, 297 A.2d 794 (1972). In Commonwealth v. Murray, 460 Pa. 53, 60, 331 A.2d 414, 717 (1975) the police singled out one particular car to stop when investigating a burglary. The car that was stopped was not violating any traffic regulations nor was there any evidence to suggest that this particular car was involved in the burglary.

Delaware v. Prouse, 440 U.S. 648, 59 L. Ed. 2d 660, 99 S.Ct. 1391 (1979) also involved the stopping

2. The Act of June 17, 1976, P.L. 162, No. 81 §, et. seq. (75 P.S. §4981(a) 1980).

of a car. In Delaware, a police officer stopped a car for a license check because he "wasn't answering any complaints," Id. at 651. Upon stopping the car the officer smelled marijuana. Subsequently, marijuana was found in the car in plain view and was seized. The Supreme Court held that this stop was an unreasonable seizure under the Fourth Amendment. However, the court said, "This holding does not preclude the State of Delaware or other states from developing methods for spot checks that involve less intrusions or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative." Id. at 663.

In this case, Trooper Snyder testified that he was on weight duty. It can be inferred that he was under a duty to weigh all commercials vehicles on Route 551. Delaware does allow spot checks that do not involve unconstrained stops bottomed upon mere discretion. Certainly, weighing a truck is not as great an intrusion as searching the truck. In Commonwealth v. Caporiccio, 210 Pa. Super. 230, 232 A.2d 42 (1967), a driver was convicted of operating an overweight vehicle. The court said:

It is the police officer's duty, under the Vehicle Code, based on his experience in truck weights, to make an estimate, and if the physical facts are such, as in this case, to indicate that the weight is behond the permissible limits, the truck must be weighed to ascertain if the truck is, in fact, in violation of the law. Otherwise, the weight provisions of the Vehicle Code would be unenforceable. 210 Pa. Super. at 232. See also, Commonwealth v. McCaskey, 75 D. & C. 2d 25, 26 (1976).

Some recent cases have held that there need be no probable cause to stop and weigh a vehicle under 75 P.S. §4981(a) (1980). In Commonwealth v.

Strier, 11 D. & C. 3d 797 (1979), a defendant was convicted of driving an overweight vehicle. The court noted that the old statute contained the words "reason to believe" which was interpreted as requiring probable cause, Id. at 798. However, since this wording is not used in the new statute, there is no probable cause requirement.

In Commonwealth v. Nealey, 13 D. & C. 3d 728 (1980), police officers were weighing all commercial vehicles crossing a restricted bridge. The defendant's was the first commercial vehicle to cross the bridge, and his vehicle was found to be overweight and he was found guilty under 75 P.S. §4902(a). The court held that where all vehicles were to be weighed, there is no probable cause requirement, 13 D. & C. 3d at 731.

This case is also distinguishable from Commonwealth v. Zych, 26 Law. L.J. 668 (1982). That case involved a conviction where no notice signs had been posted. In this case, the record shows that there were adequate warning signs posted; therefore, this application of the statute does not violate the United States Constitution, as cited in Zych.

Also, there is neither law nor statutory authority prohibiting the use of private scales. Under P.S. §4981(b) the use of private scales is permitted if there is an agreement between local authorities and the private industry, and if the scales are certified by the Department of Agriculture. In this case, Trooper Snyder testified that there was an agreement with Metcoa, and Metcoa's scales were certified by the Department of Agriculture. Therefore, there was nothing wrong with Trooper Snyder weighing the vehicle on Metcoa's scales.

The arresting officer is under no duty to inform the driver of his right to have the vehicle reweighed on the nearest available scales which have been cer-

tified by the Department of Agriculture pursuant to 75 P.S. §4981(d). We cite the well established legal maxim that everyone is presumed to know the law. In Re Kearney, 136 Pa. Super. 78, 7 A.2d 159 (1939).

There are many rights created by statute for which there is no corresponding duty in the enforcement authorities to inform the defendant. For example, police officers need not advise a defendant that he would be permitted to have a physician of his own choosing administer additional breath or blood tests under the Vehicle Code, 75 P.S. §624.1(3)(g); Commonwealth v. Gallagher, 3 Pa. Commw. 371, 283 A.2d 508 (1971). In the case of In Re Hamsher Motor Vehicle Operator License Case, 196 Pa. Super. 336, 175 A.2d 303 (1961), the Superior Court held that although the defendant had a statutory right to a hearing following suspension of his license, there was no legal requirement that he must be informed of that right. The court stated that the licensee was presumed to know the law, including his right to a hearing, and by his failure to request one, that right was deemed to be waived. There are two lower court cases in Pennsylvania which are directly on point, holding that the police officer need not advise the operator of an overweight vehicle of his right to have a reweigh on the nearest available scales. They are Commonwealth v. Mentz, 3 D. & C.3d 257 (1975), and Commonwealth v. Kauffman, 9 D. & C. 3d 783 (1977).

In the instant case, defendant is presumed to know his rights under the Vehicle Code, and the police officer is under no obligation to advise him of his right to have the vehicle reweighed. As no request for a reweigh has been made, that right is deemed to be waived. Defendant may not now come forth and plead ignorance of the law as a defense.

Adequate signs were posted and this appeared to be a systematic check to weigh all vehicles. The truck was found to be overweight on accurate scales certified by the Department of Agriculture. On that basis, Mr. Bundrant's conviction must be affirmed.

However, in the final disposition of this case, the court must make the following additional observations. The Act of June 18, 1980, 229, No. 68, §5 (75 Pa. C.S.A. §4902 et seq.) provides the penalties for exceeding maximum weight limitations. However, the court must also note the provisions of the Act of April 28, 1978, P.L. 202, No. 503, §13 (25), as amended by the Act of Oct. 5, 1980, P.L. 693, No. 142, §402 (75 Pa. C.S.A. §6504), which is statutory law enacted under the title of the "Vehicle Code" and which relates to the inability of a person to pay a fine and costs.

The enactment provides as follows:

a. Order for installment payments. Upon plea and proof that a person is unable to pay any fine and costs imposed under this title, a court may, in accordance with 42 Pa. C.S.A. §9758 (relating to a fine), order payment of the fine and costs in installments and shall fix the amounts, times and number of payment.

The statute which is referred to, viz., the Act of December 30, 1974, P.L. 1052, No. 345, §1, as amended by the Act of October 5, 1980, P.L. 693, No. 142, §401, (42 C.S.A. 9758) is a section of the "Sentencing Code." The cited provisions are as follows:

(a) General Rule. In imposing a fine the court shall at the time of sentencing specify the amount of the fine up to the amount authorized by law and shall provide when it is to be paid, and in the absence of statutory direction provide whether it is to be paid to the county or to the Commonwealth.

(b) Installment Payment. The court may permit installment payments as it considers appropriate to the circumstances of the defendant, in which case its order shall specify when each installment payment is due.

(c) Alternative Sentence. The sentence of the court may include an alternative sentence in the event of nonpayment.

Since the "Vehicle Code" makes reference to the "Sentencing Code," the court should consider the other applicable provisions of the "Sentencing Code" as it relates to the payment of fines. A portion of the "Sentencing Code" provides as follows:

(a) . . .

(b) . . .

(c) Exception. The court shall not sentence a defendant to pay a fine unless it appears on the record that:

(1) the defendant is or will be able to pay the fines:

(2) . . .

(d) Financial Resources. In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose.

The Act of December 30, 1974, P.L. 1052, No. 345, §1, et seq. As amended by the Act of October 5, 1980, P.L. 693, No. 142, §401(a) et seq. (42 Pa. C.S.A. §9726).

What presents a burdensome problem to the court here is the ultimate hardships experienced by violators of the "Vehicle Code" as in the case sub judice as compared to some other violators of the "Vehicle Code" and all violators of the "Criminal Code." And that same concern was apparently shared by the Pennsylvania legislature to some ex-

tent when it enacted legislation pertaining to violators of the "Vehicle Code" who were financially unable to secure funds to pay the fines and costs for motor vehicle violations. The initial question here is whether or not that portion of the "Vehicle Code" which refers to installment payments relates to overweight cases; and secondly, is that portion of the "Vehicle Code" which imposes statutorily defined fines violative of the defendant's equal protection rights as guaranteed by the fourteenth amendment to the Constitution of the United States.

Initially, the court must note that pursuant to the provisions of the "Sentencing Code" fines may not be imposed for offenses involving the "Criminal Code" and some violations of the "Vehicle Code" when the defendant is not able to pay the fine. Thus, the sentencing judge is required to determine, before imposing a fine upon a defendant for a violation of the "Criminal Code" and for some violations of the "Vehicle Code" whether or not the defendant is able to pay it. Commonwealth of Pennsylvania v. Schwartz, 275 Pa. Super. 112, 418 A.2d 637 (1980). At the very least the right to make installment payments has been extended to violators of the "Vehicle Code" including matters involving overweight vehicles. Since under the present status of the law the court is compelled to impose a statutorily defined fine upon this defendant without inquiry into his ability to pay the fine, the questions is then presented at this juncture — is the applicable portion of the Motor Vehicle Code, the Act of June 18, 1980, 229, No. 68 §5, (75 Pa. C.S.A. §4902(g)), violative of defendant's right to the equal protection of the laws?

The fourteenth amendment to the Federal constitution provides that all persons born or naturalized

in the United States and subject to the jurisdiction thereof are citizens of the United States and of the state wherein they reside, and that the states are forbidden to deny to any person within their jurisdiction equal protection of the laws. Nebbia v. New York, 291 U.S. 502, 78 L. Ed. 940, 54 S.Ct. 505 (1934). That amendment, in declaring that no state shall deprive any person within its jurisdiction the equal protection of the laws, undoubtedly intended that no arbitrary classification should be established. Thus, the guaranty of the equal protection of the laws signifies that no person shall be denied the same protection of the laws which is enjoyed by other persons in like circumstances. Kentucky Finance Corp. v. Paramount Auto Exchange Corp., 262 U.S. 544, 67 L. Ed. 112, 43 S.Ct. 636 (1923); and also individuals must be afforded the same protection of the laws as those laws relate to their property. See Traux v. Corrigan, 257 U.S. 312, 66 L. Ed. 254, 42 S.Ct. 124 (1921). Additionally, recognizing that the equal protection clause has multitude applications, the polestar is often quoted as requiring that all persons be treated alike under like circumstances and conditions. Polar Ice Cream and Creamery Co. v. Andrews, (N.D. Fla.), 208 F.Supp. 899, Revd. on other grounds 375 U.S. 361, 11 L. Ed. 2d 389, 84 S.Ct. 378 (1964).

It is true that the Supreme Court has held that the constitutional guarantee of equal protection is not defined as an indiscriminate operation on persons merely as such, but, as already stated, applies to all persons according to their circumstances. Equal protection, then, does make allowance for classification of all similarly situated individuals. See Personnel Admr. of Mass. v. Feeney, 442 U.S. 256, 60 L. Ed. 2d 870, 99 S.Ct. 2282 (1979). But the classification must be reasonable and not arbitrary.

Morey v. Doud, 354 U.S. 457, 1 L. Ed. 2d 1485, 77 S.Ct. 1344 (1957).

The courts have also held that the equal protection clause of the fourteenth amendment requires that the classification must be bottomed upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly situated should be treated alike. Stanton v. Stanton, 421 U.S. 7, 43 L. Ed. 2d 688, 95 S.Ct. 1373 (1975). Also, in many instances, it is difficult to determine if the classification is reasonable or unreasonable, Seaboard A. L. Railway v. Seegers, 207 U.S. 73, 52 L. Ed. 108 28 S.Ct. 28 (1907); consequently, the determination must be made by the facts presented in each individual case, Griffin v. County School Board, 377 U.S. 218, 12 L. Ed. 2d 256, 84 S.Ct. 1226 (1964).

There can be no doubt here that the legislature has effectively provided for three classes of individuals: (1) violators of the Motor Vehicle Code, who are not favored by the legislation,[3] (2) violators of the Motor Vehicle Code who are favored by the legislation; and (3) violators of the "Criminal Code" who are favored by the legislation. In each instance those classes favored by the legislation are not liable to pay a fine unless it appears of record that they possess adequate resources.

Turning to the two initial classifications, there are various offenses defined in the Motor Vehicle Code which are punishable under the terms of the "Sentencing Code"; e.g., driving under the influence of

---

[3] Again, the favored legislation here is the Act of Dec. 30, 1974, P.L. 1952, No. 345, §1 as amended by the Act of Oct. 5, 1980, P.L. 693, No. 142, §401(a). Specifically the Act states that the court shall not sentence a defendant to pay a fine unless it appears of record that the defendant is or will be able to pay the fine.

alcohol or controlled substance,[4] which is classified as a misdemeanor of the third degree and punishable by a term of imprisonment of not more than one year[5] and a maximum fine of $2,500.[6] Also, homicide by vehicle is a violation of the Motor Vehicle Code[7] and is classified as a misdemeanor of the first degree,[8] and the maximum fine being $10,000. In imposing a fine for either the offense of driving while under the influence of alcohol or a controlled substance or the offense of vehicular homicide the court cannot levy any fine if the financial circumstances of the defendant are not favorably structured; and if the financial structure of the defendant does permit the imposition of a fine, the amount of the fine is dictated by the pecuniary capability of defendant; however, in levying a fine for an overweight violation the court is not afforded the right to consider the financial plight of defendant.

Admittedly, a classification having some reasonable basis is not constitutionally offensive merely because it is not made with mathematical nicety or even because the effect results in disparity. However, here the court fails to recognize any reasonable basis for the classifications.

The primary purpose of the Motor Vehicle Code and its amendment is to protect the public safety, and every provision of the code is to be interpreted

---

4 See the Act of June 17, 1976, P.L. 162, No. 81, §1 (75 Pa. C.S.A. §3731).

5 See the Act of December 6, 1972, P.L. ____, No. 334, § et seq. (18 C.P.S.A. §106(b)(8)).

6 See the Act of December 6, 1972, P.L. ____, No. 334, §1 et seq. (18 C.P.S.A. §1101(5)).

7 See the Act of June 17, ____, P.L. 162, No. 81, §1 (75 C.S.A. 3732).

8 See the Act of December 6, 1972, P.L. ____, No. 334, §1 (18 C.P.S.A. §106(b)(6)).

in the light of that intent. See Commonwealth v. Oakley, 36 D. & C. 326, (1940). And, also, the "Vehicle Code" was intended to provide a uniform system or code of law regulating the use and operation of motor vehicles throughout the state and should be construed to affect that purpose. See Commonwealth v. Zahniser, 33 D. & C. 35, (1939).

Here, there appears no reasonable basis to treat an individual who is found guilty of an overweight violation differently than an individual who has been found guilty of vehicular homicide or driving while under the influence of alcohol. In each instance the violator has performed an act aimed at destroying the public safety.

The court must also recognize that an overweight violation is a summary offense. Coincidentally, a summary offense is defined in the "Crimes Code." See 18 C.P.S.A. §106(c). To opine that an individual who is convicted of driving while under the influence of alcohol is denied his equal protection rights because he may be subjected to incarceration since a driver of a motor vehicle, who is found guilty of an overweight offense, must only pay a fine is to ignore the basic right of the legislature to treat the more serious offense with a more severe reprimand. And, paradoxically, the individual convicted of the less serious offense, i.e., an overweight violation, may encounter a more stringent and severe penalty than the individual convicted of the more serious offense, i.e., driving under the influence of alcohol or vehicular homicide, since in the former the statutory fine is financially significant and mandatory; conversely, and regarding the less serious offense, a fine can only be imposed if "[T]he defendant is or will be able to pay the fine." See 42 Pa.C.A.S.A. §9726(c)(1).

Thus, under the present statute of the law in Pennsylvania, the court is compelled to impose a statutorily defined fine upon a violator of the overweight provisions of the "Vehicle Code" without inquiry into his ability to pay the fine; resultantly, his financial resources are insignificant. Contrarily, the financial resources of other violators of the "Vehicle Code" are significant, viz., those who violate the provisions of the "Vehicle Code" relating to driving while under the influence of alcohol or those who are found guilty of vehicular homicide.

Consequently, the court must hold that the classification here is invidiously discriminatory. And collaterally, the court must express concern that the fine here is substantial, it being in the amount of $15,315, which is a higher fine than can be imposed for a felony of the third degree. To offer the court no alternative but to apply a stringent formuli in imposing a fine could financially annihilate a motor vehicle violator, while, on the other hand treating other violators of the "Vehicle Code" with tender care is highly repulsive and contrary to the Fourteenth Amendment to the Constitution of the United States.

Since this court finds that the created classifications within the confines of the "Vehicle Code" are discriminatory and constitutionally insecure, the issue as it relates to the classifications encompassing violators of the "Criminal Code" as compared to violators of the "Vehicle Code" will not be addressed in this opinion.

## ORDER OF COURT

Now, January 24, 1983, in conformity with the opinion filed herewith, the court hereby sets aside the conviction of the defendant by District Magistrate, Robert L. Zedaker, in that section (g) of the

Act of June 18, 1980, P.L. 229, No. 68 (75 Pa. C.S.A. §4902(g)) denies to the defendant the equal protection of the laws as guaranteed by the Fourteenth Amendment of the Constitution of the United States.